## Charles L. Ortman v. Washington S. Green and another.

*Contract: Sale: Logs: Title: Delivery.* A contract which purports to provide for the sale of a certain number of logs, measuring a given number of feet by a scale that had been made and was referred to, and providing for the delivery of the logs at a point named, is not a present sale of a parcel containing a greater number, though less in amount, by reason of a mistake of the scaler; and no title passed in any of the logs before delivery.

*Logs: Average size.* The purchaser could not, therefore, be held to have waived his objections to the failure to furnish logs of a proper average size, by receiving such as were furnished below it, because he could not assume that the average might not be made up by the remainder.

*Sale: Logs: Scale: Vendor: Warranty.* A sale according to a scale already made, without any previous employment of the scaler, by the vendee as well as the vendor, implies a warranty by the vendor that the scaler is competent and the scale honestly made, unless it clearly appears that the vendee assumed that risk.

*Scaler: Mistake.* Even where the scaler is agreed upon, the parties are not precluded from showing a mistake of fact in his computations, although in matters purely of judgment, where there is no mistake of fact, he would bind them.

*Logs: Average size: Agreement to make good deficiency: Consideration.* When a purchaser under a contract has a right to decline receiving logs because below the average size to which he is entitled, and is induced to accept them by a promise that the deficiency shall be made good, the promise is not void, but will be supported by the consideration, and it is not necessary that there should have been any original fraud in the vendor, to make such new agreement binding.

*Evidence: Scale of lumber: Variance in measurement: Mistake: Incompetency.* Evidence that the variance between a scale of lumber and its final measurement, is too great to be accounted for by any variance of judgment between competent scalers, will justify a finding that there has been either mistake or incompetency in the original scaling.

*Heard October 19. Decided November 23.*

Error to Saginaw Circuit.

*L. T. Durand* and *Sutherland & Wheeler*, for plaintiff in error.

*Gaylord & Hanchett*, for defendants in error.

CAMPBELL, J.

The controversy in this cause arises out of the alleged difference between the scaling of certain logs, on the faith

of which they were purchased, and the amount actually found by subsequent measurement and computation, on delivery.    And the questions all turn upon the effect to be given to the original bill of scaling.    The contract was made June 25th, 1870, and the material part of it reads as follows:

"The said parties of the first part agree to sell, and do hereby sell, unto the said party of the second part, eighteen thousand nine hundred and ninety-two pine saw-logs, marked 'W. S. G.,' and banked in town fourteen north, range two west, during the past logging season, and measuring four million one hundred and fourteen thousand six hundred and twenty feet board measure, according to the scale on the bank made by W. L. Wade, of the firm of Sanborn and Wade, the same to be delivered in the Tittabawassee boom the present season, for the price of six dollars and fifty one-hundredths dollars per M. feet, according to the scale above mentioned; and the said party of the second part agrees to buy, and does buy, from the said parties of the first part all the logs aforesaid, delivered in said Tittabawassee boom, at the price aforesaid, according to the scale or measurement aforesaid, and to pay for the same as follows," etc.

It appeared from the showing of plaintiffs below, that the logs scaled by Wade amounted to nineteen thousand and ninety-three, and the scale actually footed up four million one hundred and two thousand seven hundred and twenty-four feet, the contract having been made on an erroneous footing of the scale bill.    It also appeared by the same showing that Ortman sold back to Green and Hardin, immediately, two thousand two hundred and fifty of said logs, at six dollars and seventy-five cents per thousand feet, to be scaled in the water by J. A. Sanborn, one of the firm of Sanborn and Wade; and that on

such scale and estimates of Sanborn, the quantity in that lot was only four hundred and forty-one thousand seven hundred and twenty-four feet. If these were average logs, the deficiency would be nearly nine per cent. on the corrected estimate; and the loss on this particular lot of logs, even at the advanced rate of six dollars and seventy-five cents per thousand, was more than one hundred and seventy-five dollars.

There was a conflict of evidence upon the point, whether the difference between a scale made on the bank and one made in the water, would account for such a difference in results. There was also a conflict as to the representations made by Green to Ortman, as to Wade's competency, and the efforts made to secure an accurate scale from him; also as to Green's personal representations and guaranties as to the logs holding out, and as to his agreeing to make up any possible deficiencies, both originally, and when the first deficiency was discovered on Sanborn's measurement and estimate.

The court held that, in the absence of fraud, the parties would be absolutely bound by Wade's scale; and that the variance found in the footings would not be material, unless the jury found it would, of itself, have prevented the bargain, if known at the time. There were instructions asked and refused on the subject of fraud and mistake, to which reference will be made hereafter.

There is one assumption, underlying the whole charge, which it becomes necessary to refer to in the outset.

The court, among other things, instructed the jury as follows: "The contract conclusively indicates that the parties negotiated about a certain lot or parcel of logs; that the plaintiffs undertook to sell, and the defendant to buy that parcel or lot; that that lot of logs had been scaled by Wade; and that his count and measurement, which consti-

tuted his scale of the same, determined the number of pieces to be eighteen thousand nine hundred and ninety-two logs, and their contents to contain four million one hundred and fourteen thousand six hundred and twenty feet." And upon this basis they were further instructed, that the defendant might show that, by Wade's scale, the number and contents varied from this, but that no evidence could be received showing Wade's scale itself, as actually made, to be wrong.

If the contract, upon its face, purported to sell an entire and known parcel of logs, at so much per thousand, to be taken at Wade's measurement already made, the questions presented might perhaps differ somewhat from those now raised. The contract, upon its face, does not recite or show that the logs referred to in it formed one parcel, or were all the logs that plaintiffs owned in one place, or one township. It refers to a fixed number of logs, neither more nor less, and measuring a certain amount by Wade's scale. There being more than that number, these logs could not be identified until delivery in the boom; and no title passed till delivery. Had the mistake in the footings of amounts been the other way, and had the amount in the nineteen thousand and ninety-three logs been in excess of four million one hundred and fourteen thousand six hundred and twenty feet, or had there been a still larger quantity and number both, Ortman could not have demanded it, and the contract would not have been violated by the refusal of either party to include the surplus. But if the whole parcel was sold in bulk, the measurement being merely to ascertain the price, the count and measurement would have been immaterial for any other purpose. The difference in principle is a substantial one. In the one case there would be a technical breach of the contract, while there would be none in the other, unless, possibly,

upon an implied warranty of dimensions. And the recovery in this case must rest upon either a substituted performance by a substantial equivalent, or on a *quantum valebat*. As Ortman could not complain if the logs averaged properly, he could not decline acceptance of such logs as were delivered from time to time, without running the risk of assuming that those behind would not make up the deficiency. So far, therefore, as his rights may have originally extended, to question the correctness of Wade's scale, this fact would excuse any delay that occurred in complaining. It may be questionable whether the delay might not have operated differently, had the sale been of an entire definite parcel.

It is only by extrinsic evidence that it is made to appear that the contract referred to a particular lot of logs, and embraced substantially the whole of that parcel. In the light of that evidence the scale becomes of material importance, as designed by both parties to furnish a standard of computation; and, in the absence of any serious mistake or suspicion, it would, for that purpose, be the final standard.

To determine its force it is necessary to consider the circumstances of the transaction. If the parties had agreed on a sale before the logs were scaled, and had agreed that Wade should scale them, he would have been made their joint agent and arbiter, and it would be difficult to impeach any act of his, honestly done, for a mere mistake of judgment. But when these logs were measured, he was acting entirely as the agent of the vendors, and on their behalf. Under these circumstances, an offer to sell by his measurement already made, involves an assertion that he is in all respects a competent person, and that he has acted honestly. Nothing short of satisfactory evidence that the purchaser was fully acquainted with his qualifications, would

remove this burden from the vendor, who demands a sound price on the basis of his measurement. And where a person so employed, even by joint appointment, makes a mistake in a matter of fact, and not merely an error of judgment, there is no ground for holding that such a mistake cannot be corrected. An erroneous assay of silver, or a mistaken count of bushels of grain, has been held to bind no one.—*Cox v. Prentice,* *3 M. & Sel., 344; Wheadon v. Olds, 20 Wend., 174.* A material representation or assumption need not be fraudulent in fact, in order to authorize its correction.

The court below confined the jury to the consideration of such mistakes as arose from the erroneous count of the logs, and footing of the scale ; and held that no mistake in scaling could be considered, if it was honest. And as the defense of constructive fraud was confined by the charge, to representations assumed to be made on Green's personal knowledge, as to the quantity of lumber, all questions of mistake in the scaling were taken out of the case.

This same view was further enforced by the charge which shut out the alleged new promise of Green, to make good the deficiency; made when Ortman claims to have discovered the deficiency in the size of the logs on Sanborn's measurement, and when, in answer to his complaint, it is averred Green represented that the remaining logs were larger, and that he would do what was right, in case they fell short. It was held there was no consideration for this promise, unless there had been fraud in the original agreement.

But if there was either mistake or fraud, and if the purchaser had a right to decline receiving logs averaging materially less than called for by the contract, then his consent to receive them on this new promise, was a suffi-

cient consideration for the promise, and the charge would in such case be erroneous.—*Moore v. Detroit Locomotive Works, 14 Mich., 266.*

It does not seem to be supposed that there was any intentional fraud or misconduct in any one. But there was evidence, which the plaintiff in error had a right to argue tended to prove either incompetency or mistake— or if he chose so to urge, fraud—in the scaler. He was not allowed to rely on it, except to show fraud. And this, we think, was error.

There was already in the case, undisputed evidence of two serious mistakes,—one in the count of the logs, and one in the footings of amounts. There could be no difference of opinion as to the materiality of the further deficit, if it existed to the extent claimed. And, while it was a question for the jury, it was one quite pertinent and proper, whether such a difference between two scales could be accounted for without fault or mistake. How many of the footings were right, and how many wrong, does not appear; but such mistakes in figures rendered it quite possible that further scrutiny might disclose others, on the face of the bills. But the method of scaling renders further mistakes quite possible to a careless reckoner.

The scaling involves two processes, one of measurement and computation by figures, and one of judgment, depending on knowledge and experience. The length and diameter of each log furnish data for determining its contents as not exceeding a certain amount. An examination of defects and irregularities enables the scaler to make such allowances as are likely to be necessary, to arrive at a near estimate of the lumber that will actually be realized from it. And the only need for an experienced scaler, is to get a safe approximation to the allowance necessary for the defects. A mistake in the purely mathematical portion of

this work, whether by misreading or wrong computation or mismeasurement, would affect the result quite as seriously as a mistake of judgment. And if it should turn out that the variance was too great to be reasonably referred to a mere error of judgment in a competent scaler, it could not fail to proceed from such a cause as would render it improper to hold any one bound by it.

If Ortman, with adequate knowledge of Wade's competency as a scaler of logs, deliberately agreed to be satisfied with his scale made on the bank, or if Wade was in fact, an honest and competent scaler, no complaint could be made of any mere error of judgment, not indicating that there had been any blunder in figures or measurement. But the testimony offered, to show that the difference in results could not be accounted for by any difference between a scale made on the bank and one made in the water, was rendered nugatory by the ruling, which held the scale conclusive, if honest, in spite of any mistakes, however serious, except the two found in the footings. We see no reason for allowing these and excluding any others.

We think that the court erred in excluding the consideration of those matters of defense resting on mistake of the scaler, as well as of the parties, and in making the rulings shown by the record on that subject; and that the judgment should be reversed, with costs, and a new trial ordered.

COOLEY, J., and CHRISTIANCY, CH. J., concurred.

GRAVES, J., did not sit in this case.