## PETERSON *v.* REICHEL.

1. Logs and Logging—Contracts—Breach—Scale—Question
for Jury.
> In assumpsit on a logging contract, whereby defendant agreed
> to pay a certain price per thousand feet for the logs cut, the
> amount to be determined by a scale to be made by some per-
> son to be agreed upon, evidence examined, and *held*, that
> whether plaintiff agreed in the selection of the person who
> made the scale on which defendant relied was a question for
> the jury.

2. Same—Fraud and Mistake.
> *Held*, that there was evidence from which fraud or mistake in
> the scale might be inferred.

3. Same—Scale—Competency.
> A scale made by plaintiff was admissible in evidence, he hav-
> ing testified that he had been in the lumber business for over
> 20 years, had observed the scaling of logs, could make a
> fairly accurate scale in fairly sound logs, and that the logs in
> question were very sound.

Error to Marquette; Stone, J.   Submitted January 24,
1906.   (Docket No. 223.)   Decided March 5, 1906.

Assumpsit by Peter C. Peterson against George
Reichel, Adam Reichel, and Henry Reichel, copartners
as Reichel Brothers, for breach of a logging contract.
There was judgment for plaintiff, and defendants bring
error.   Affirmed.

*Button & Heffernan*, for appellants.

*Young & Bell*, for appellee.

HOOKER, J.   The defendants are the appellants.   Be-
ing the owners of timber lands, they entered into a writ-
ten contract with the plaintiff, whereby the latter under-
took to cut and make logs of the pine trees standing upon
the lands at a fixed price per thousand feet; the amount of

logs to be determined by a scale to be made by some person to be agreed upon. A scale was made by one Doyle, an experienced man, who was sent to do it by the defendants. His scale was not satisfactory to the plaintiff, who then scaled it himself, and brought this action to recover the price of the difference in amount between the scales, and a small item for a share of Doyle's compensation, deducted by the defendants when they paid plaintiff the amount shown by Doyle's scale to have been his due. The errors discussed in appellants' brief are:

(1) That the court should have instructed the jury that Doyle was a scaler, upon whom the parties agreed, and that it was error to permit the jury to find otherwise.

(2) That it was error to allow the jury to consider the question of a fraudulent or mistaken scale by Doyle, the case not having been tried upon such a theory, and no evidence indicating fraud or mistake.

(3) That the testimony of the plaintiff as to the scale made by him was erroneously admitted, for the reason that his testimony showed that he was an inexperienced and incompetent scaler of logs, and that it was error to permit the jury to consider his testimony.

1. The plaintiff testified:

" I never agreed with Mr. Reichel upon any scaler to scale these logs. Mr. George Reichel brought a man to scale them December 12th, on which day I came down in the woods about 5 o'clock in the afternoon and found George Reichel and two men scaling over on the skidways. Mr. Reichel said that he came there that day to scale and brought his men along, and he went on over on to the next skidway and pulled out a letter from somebody, some lumber inspector, I guess, or some man in Menominee, to recommend this scaler that he had there —to recommend this scaler that he had there, to recommend him as a competent man—and I read it, and says to him: 'That is all right as far as it goes. If the scale is all right, the scaler is all right; and, if it is not, he ain't.' And I turned around and went to my men skidding and he went over to the scalers again, and they kept on scaling. This man who was doing the scaling was a Mr. Doyle. I never met him before to my knowledge, or heard of him before. The logs were decked up on skid-

ways, and the scaling was commenced on the E. ½ of N. E. ¼ of section 32. On the completion of the scale on this description, I got a report from Mr. Reichel about December 20th. When I got this report I knew that I was not getting the scale that I felt I was entitled to. It did not state the number of logs on the scale bill, but the scale stated the number of feet, and my foreman had counted the logs, and I knew by the experience I had had that it wouldn't take over six logs to the thousand—it wouldn't take near that, either. So the next morning I took a man with me, and we went out, and I scaled them over again. After I had done that I met Mr. Reichel out here on the other side of Deer Lake and I told him how it was. I met him on the 3d of January. I told him that I could not take the scale—it was out of reason altogether. Mr. Reichel replied that his scale was all right—it overrun the estimate of the timber. He was sure it was right. I asked Mr. Reichel at that time to agree with me upon some scaler who was satisfactory to both, but he said there was not anybody to be got—they were all busy. That is all the satisfaction I got out of it. I don't recollect when I next saw Mr. Reichel about the scaler, but I was at him most every time I saw him. I wrote a letter to Reichel Bros. as follows:

" 'NEGAUNEE, MICH., Jan. 30, 1903..

" 'Mess. REICHEL BROS.,

" 'Marquette, Mich.

" 'Gentlemen: I have notified you several times verbally heretofore, and I now notify you formally in writing, that the scale of logs made by John Doyle, as reported to me by you, on our contract of October 10, 1902, for taking out logs by me for you on sections 32, 34, and 36, town 49 north, range 28 west, is not satisfactory to, and will not be accepted by, me as correct. Under our contract the scaler of these logs must be mutually agreed on, and you have caused him to make the scale without consulting me. I want a fair scale and offer to meet you at any time and place you may name to agree on a scaler satisfactory to both of us, who shall scale all the logs taken out under this contract before the logs in the river become mixed with those taken out by other parties. Unless this is done, and if you persist in scaling with a man of your own selection, then I shall have these logs all scaled by a competent and fair man and shall expect you to pay me for all I take out. I have already had the logs taken out correctly scaled for my own protection.

" 'Yours respectfully,

" 'P. C. PETERSON.'

"I had several conversations with George Reichel after I sent this letter in regard to a scaler to scale the logs. He made the reply that he could not get any scalers. After that time I met him once down in Mr. Clark's office. I offered to scale the logs at the hoist. The logs were in the river somewhere at that time above the hoist, and they all had to come out over the hoist to get to Marquette. I should think it was practicable to scale all the logs as they came over the hoist. They scaled them all on the cars there. They scaled them right along that way. Mr. Reichel replied to this it would take too long and be too much expense. That is the reason he gave."

The defendant's testimony was not in accord with this, and tended to show that plaintiff acquiesced in the selection of Doyle. We are of the opinion that it was not erroneous to leave this question to the jury.

2. The court charged the jury that:

"If you believe from the evidence that the defendants procured John Doyle, an experienced woods scaler, to scale the logs in question in the woods, or on the bank of the stream, as provided for in the contract, and that they notified the plaintiff that they had procured such scaler, and asked him to be at the place of scaling at a day appointed for the scaling, and that said Peterson acquiesced in such arrangement and was at the banking ground on the day that John Doyle began scaling, and watched his method of scaling and expressed his satisfaction therewith, he cannot repudiate such scale. That is true, gentlemen, he cannot repudiate such scale, if such were the fact, provided there was no fraud or mistake in the scale of Mr. Doyle. Now, gentlemen, look the case over, and if you are able to say that there was a scaler agreed upon, that Mr. Doyle was agreed upon as a scaler, and that his scale has been free from fraud or mistake, then the plaintiff cannot recover here upon this logging contract at all."

And again he said:

"Now, as I say, you want to get at the truth of the matter as to this scale. So, in the first place, say whether or not a scaler was agreed upon. If agreed upon, and his scale is honest—no fraud or mistake in it—then there can be no recovery. If not agreed upon, but it is correct, then there can be no recovery upon the logs.   *   *   *

"Now, gentlemen, if you should find that the defendant is right in this matter, and that the scaler was agreed upon,—that Mr. Doyle was agreed upon, and that his scale was free from fraud or mistake,—then there could be no recovery upon the logging contract, and the defendants would have a right to make the charge which they have, of $37.50, one-half of the scale bill; that is, in case you find that the scaler was agreed upon.   *   *   *

"That is upon the theory that this scaler was not agreed upon, but that his scale is correct.   For, in that event, he would be the scaler for Mr. Reichel; and, if it happens to be a correct scale, he would have no right to charge up one-half of his wages to Mr. Peterson, the plaintiff, for that was only in case a scaler was mutually agreed upon.   So, I think, gentlemen, you understand it was this scaler agreed upon ?   Is the plaintiff correct when he says that this is the quantity gotten out, and that he has never received pay for this entire quantity of logs gotten out on section 32 ? "

In the case of *Ortman* v. *Green*, 26 Mich. 215, our predecessors said :

"It does not seem to be supposed that there was any intentional fraud or misconduct in any one.   But there was evidence, which the plaintiff in error had a right to argue tended to prove either incompetency or mistake—or, if he chose so to urge, fraud—in the scaler.   He was not allowed to rely on it, except to show fraud.   And this, we think, was error.

"There was already in the case undisputed evidence of two serious mistakes; one in the count of the logs, and one in the footings of amounts.   There could be no difference of opinion as to the materiality of the further deficit, if it existed to the extent claimed.   And, while it was a question for the jury, it was one quite pertinent and proper, whether such a difference between two scales could be accounted for without fault or mistake.   How many of the footings were right, and how many wrong, does not appear; but such mistakes in figures rendered it quite possible that further scrutiny might disclose others, on the face of the bills.   But the method of scaling renders further mistakes quite possible to a careless reckoner.

"The scaling involves two processes; one of measurement and computation by figures, and one of judgment, depending on knowledge and experience.   The length and

diameter of each log furnish data for determining its contents as not exceeding a certain amount. An examination of defects and irregularities enables the scaler to make such allowances as are likely to be necessary, to arrive at a near estimate of the lumber that will actually be realized from it. And the only need for an experienced scaler is to get a safe approximation to the allowance necessary for the defects. A mistake in the purely mathematical portion of this work, whether by misreading or wrong computation or mismeasurement, would affect the result quite as seriously as a mistake of judgment. And, if it should turn out that the variance was too great to be reasonably referred to a mere error of judgment in a competent scaler, it could not fail to proceed from such a cause as would render it improper to hold any one bound by it."

It is said that the case was not tried upon the theory of fraud or mistake, but the charge indicates that it was, and there was testimony from which they may have been inferred, under the rule laid down in *Ortman* v. *Green.*

3. The claim is made that the plaintiff's testimony showed that he was not a competent scaler. He testified:

"In the month of December, 1902, I made my own personal scale of these logs on the E. ½ of the N. E. ¼ of section 32. The scale was kept in writing, and I have it here. I have been in the lumber business since 1884, every, or nearly every, winter since then. During that time my experience in handling, scaling, and ascertaining the scale and watching the scaling of logs is that I have been jobbing all the time taking out logs by the thousand. I have not made my own scales. I generally had scalers, but lots of times I have scaled, and I was interested in scaling all the time. I think I am able to make a fairly accurate scale in anything like sound logs. Fairly sound logs I could scale all right. These logs were very sound ones. The logs would run between four and five to the thousand, I think. They were large pine logs. That is my judgment."

On cross-examination he said:

"When I was asked by Mr. Bell, 'State whether or not you are capable of making a fairly accurate scale,' I answered, 'I think I was. Anything like sound logs, fairly sound logs, I could scale all right.' I mean that

if the logs were sound I could determine the contents of those logs, and I meant, as I now say, to measure the log inside the bark at the smaller end was the proper way, and that the cubical contents shown by the rule would be the measure of that log; but where there is rot, or shake, or punk in a log, that is something that requires a man of skill in the line of scaling to know just what should be allowed for it. That is the reason I spoke of being capable of scaling sound logs, but not logs that were shaky and punky, and so on. I did make deductions for shake, and punk, and rot, and anything of that kind. I did like the rest, guessed at it. I did the best I knew how. I never acted as scaler for anybody before I went into the lumber business, and knew nothing about scaling, and did not see any scaling done before that. I have been in the lumber business more than 20 years, and what I have learned about it I have observed. Lumbering has been my paramount business."

We are of the opinion that evidence of his scale was admissible, and that the court did not err in permitting the jury to consider it with testimony of other scales.

We find no error in the record, and the judgment is affirmed.

McALVAY, GRANT, BLAIR, and MOORE, JJ., concurred.