BROOKS v. BELLOWS.

1. PLEADING—BILL OF PARTICULARS—BREACH OF CONTRACT.
    On the trial of an action for labor performed under a logging contract, it was erroneous to permit a recovery for an item of damages, claimed to arise from breach of the contract, but not specified by any item of the plaintiff's bill of particulars.

2. LOGS AND LOGGING—CONTRACTS—MEASUREMENTS.

If, as claimed by the defendant, both parties selected and agreed upon a scaler who measured the timber included in a logging contract, the trial court correctly advised the jury that his scale was conclusive upon both except that fraud or gross mistake might be set up: and the court correctly left it to the jury, under disputed evidence, to determine whether they had agreed upon a scaler.

3. SAME—EVIDENCE.

But if, as plaintiff contended, the parties were unable to agree upon a regular scaler to represent both, as contemplated by the contract, and defendant's own scaler, by agreement, was to act so long as the scale that he furnished to plaintiff was satisfactory, defendant could not repudiate the scale furnished, under his instructions, and accepted by plaintiff, and, after the logs were removed and sawed, compel the latter to accept a different scale.

4. SAME—PERFORMANCE—EXCUSE FOR BREACH.

Where defendant deposited a large sum of money in a bank, as provided in the contract of the parties, to be drawn on by the plaintiff for logging work, the burden was on the plaintiff to show that he paid out the deposited funds for labor and supplies, as agreed: proof that the defendant did not furnish more money on request, without vouchers or proper evidences of due expenditure of the deposits, was insufficient.

Error to Benzie; Lamb, J. Submitted October 16, 1913. (Docket No. 54.) Decided March 27, 1914.

Assumpsit by Oscar H. Brooks against Edwin H. Bellows for work and labor performed under a special contract and for damages for its breach. Judgment for plaintiff. Defendant brings error. Reversed.

*D. G. F. Warner*, for appellant.

*M. G. Paul*, for appellee.

STEERE, J. This action was brought by plaintiff to recover a balance claimed due him for labor per-

formed on a logging contract with defendant, and two small items for teaming and board in connection with such contract. Defendant was the owner of 160 acres of timber land located in Weldon township, Benzie county, Mich., upon which was a growth of mixed forest products consisting of hardwood, hemlock, pine, and cedar, which he desired lumbered, and, on April 20, 1911, he entered into a written contract with plaintiff to lumber this tract, the material parts of which are as follows:

"This agreement made and entered into this 20th day of April, 1911, by and between E. H. Bellows of the village of Frankfort, Benzie county, Mich., party of the first part, and O. H. Brooks of the village of Thompsonville, county and State aforesaid, party of the second part: Witnesseth: That the said party of the first part hereby agrees to let to said party of the second part, the job of cutting all of the timber in manner as hereinafter specified, off from the following described land, to wit: The southwest quarter of section 31 of the township of Weldon, Benzie county, Mich.

"Conditioned: That the said party of the second part hereby agrees to cut into sawlogs all of the timber on said above described lands (the size of said timber to be cut to be determined by said party of the first part), during the summer of 1911 and winter of 1912. The price to be paid for the cutting, skidding and putting afloat on the hardwood into Betsey river, in the spring when directed to do so by said party of the first part, shall be $3.35 per thousand. The price to be paid for the cutting, skidding and putting afloat of the hemlock into said river shall be $2.25 per thousand; the same to be put afloat not earlier than October, 1911. The price to be paid for the cutting, skidding and putting afloat of the cedar into the river shall be $4 per thousand; the same to be put afloat at any time when scaled.

"As much as possible of the hardwood logs are to be cut 14 feet long, the balance to be cut into 12 and 16-foot logs. All hemlock to be cut into 18-foot logs,

as is possible to do so; the balance to be cut into 12, 16 and 14-foot logs. All but elm logs are to be cut 16 feet long and peeled in the woods when cut and butted if necessary.

"The second party also agrees to cut all logs square off at the ends so as not to leave any stubs at ends; to cut all logs so as not to leave any breaks in them if made by the falling of the timber; to also cut and put all hardwood logs upon good skids in the woods as early as September 1st, 1911. And also all hardwood logs to be banked on good skids at the Betsey river, so as not to allow any logs to rest on the ground or in the water until put afloat in the spring of 1912. That said party of the first part agrees to pay $1.75 per thousand on the hardwood when scaled on skids on the bank of the river, and the balance of said $3.35 when put afloat as aforesaid, and in case said logs are not put afloat as rapidly as said first party may desire, said party of the first part reserves the right of putting on men sufficient to put said logs afloat when he desires to make the drive, and the expense so incurred to be charged to said second party, and to be taken out of his contract price.

"Said second party also further agrees to peel off all hemlock bark closely and in good shape and to remove it out of the woods in a suitable place, easy to get to, so that teams can draw away full loads; and when so delivered said party of the first part agrees to pay to said party of the second part $3.50 per cord.

"It is mutually agreed by the parties hereto that all moneys to be paid on this agreement shall be deposited in the bank at Thompsonville, to be drawn out in checks, only for labor and supplies, and in no case to be drawn in excess of the amounts hereinbefore stated, and the balance to be paid when job is completed.

"It is also mutually agreed to by the parties hereto that all timber herein mentioned shall be cut as directed by said party of the first part from time to time, and the same to be done in good and workmanlike manner, and approved by said party of the first part.

"And the scaling to be done by a good, competent scaler approved of by both parties and each party to pay one-half of said scale bill.

"In witness whereof the above named parties have hereunto set their names this 20th day of April, 1911.

"ELWIN H. BELLOWS.
"O. H. BROOKS.

"Witness."

Plaintiff's declaration is upon the common counts, with an added count reciting the contract, alleging breach of the same on the part of the defendant in failing to make the payments as specified, and performance on plaintiff's part to the full extent of his ability, but admitting failure to entirely complete the contract, charging that this was through the fault of defendant as follows:

"That plaintiff has been compelled, in order to continue said job to the time aforesaid, to invest therein of his own personal funds every cent that he had or could get, so that plaintiff is totally without funds, and is unable to finish the few days' work necessary to complete said contract, all of which will and has caused the plaintiff great damage," etc.

Plaintiff also filed and served a bill of particulars, setting forth the amount of logs cut and hemlock bark peeled and piled, two small items for extra teaming and board furnished, and crediting payments received by him, showing a balance claimed his due amounting to $1,695.45.

Defendant pleaded the general issue and gave notice of recoupment, alleging that the timber was not cut clean from the land, that it was not properly piled upon skids upon the stream, but rolled over an embankment in a promiscuous manner; that it was not cut seasonably, as required in order that it might have time to dry before being driven, resulting in a quantity of logs sinking when put afloat; that the bark was not properly peeled, and was piled in inaccessible places; that logs were cut and left scattered in the woods, lying upon the ground where cut and difficult of access; and that a large portion of the logs

were not put afloat in the river as agreed, by reason of all of which things defendant claimed damages by way of recoupment.

Soon after this contract was entered into, on April 20, 1911, plaintiff entered upon its performance. He commenced building his shanties upon the tract upon the 15th of the next month, and shortly thereafter began with his crew cutting logs and peeling the hemlock bark. He continued operations upon the contract until the 2d day of March, 1912, when he quit and withdrew from his camps. He testified comparatively little remained to be done to complete the contract, but that he was unable to continue longer and finish because his means were exhausted, and money owing him by defendant was not furnished according to agreement, and on the 22d of the same month commenced this action. At that time none of the logs had been put afloat except a part of the hemlock, cut and watered the preceding fall.

Defendant testifies that the logs were not cut and skidded according to contract, but were thrown over in jam piles near the shore of the river, crossed and tangled, and left there for him to put afloat in the spring; that the extra expense of blasting stumps out of the way with dynamite, pulling the logs around with teams and other necessary labor caused by improper piling, made it cost at least a dollar per thousand more than it otherwise would to get the logs into the water. Plaintiff denied this, and testified that the logs were cut and skidded according to contract and as directed from time to time by plaintiff; any variation as to time and method specified in the contract being in compliance with defendant's instructions.

After this suit was begun plaintiff returned to the banking ground and put afloat a portion of the logs. He testified that it cost about one-third more to put

in those piled in rollways that were "crisscross;" that he put in three rollways, besides some seven or eight skidways along the river. A scaler named Hutton, who was there when the logs were put afloat, testified that plaintiff put in part of the logs the fore part of April, and that the balance, about two-thirds of the hardwood and one-third of the hemlock, were rolled in later and driven for defendant by a man named Osman.

The record presents much conflicting testimony as to plaintiff's compliance with or violation of the requirements of his contract while the work was in progress. The various questions thus raised relative to amount and method of work, time of performance, supplemental agreements between the parties, and directions given by defendant, varying the terms of the contract, are issues which would ultimately be for the jury, and need not be further considered in detail here.

The case was tried for plaintiff on the theory and under the claim that defendant retained money due plaintiff necessary to continue the work, and his default in that particular operated to prevent performance; that plaintiff therefore had the right, upon such breach by defendant, to discontinue further attempt to complete the contract and at once bring an action to recover damages for its breach, the measure of which would be the contract price for work done and loss of prospective profits on work remaining to be done; it being the presumption that he would have continued and completed his contract had defendant not defaulted. Plaintiff sought to prove he had not been fully paid for work performed, and gave some testimony as to what his profits would have been on certain work under the contract not yet done. He recovered a verdict of $1,500.

In charging the jury the court advised them that plaintiff's claim was both for the contract price of

work done under the contract at the time he was compelled to abandon it and for profits that would have accrued to him from completion of work yet to be done, saying:

"If you find that the plaintiff was forced to abandon the contract by reason of the failure of the defendant to perform his part thereof, then in that case the plaintiff would be entitled to damages, and the measure of such damages would be the profit he would have made on the uncompleted portion, and that sum you will determine from the testimony in the case."

The latter claim should have been excluded. Without considering other objections, we find plaintiff's bill of particulars is limited to items of work done and meals furnished, with price for same, and absolutely silent as to prospective profits. His range of recovery cannot extend beyond his bill of particulars. 1 Abbott's Practice and Forms, § 998. The amount of payments made, and the fact that plaintiff abandoned the operation before completing it, being conceded, the paramount propositions upon which his right of recovery depended were the scale of the logs cut and the cause of his quitting before the contract was finished. These center around the two clauses in the contract relative to scaling, payments as the work progressed, and use to which such payments were to be devoted. The scaling was in charge of and mostly done by a scaler named Frost, who had been in the employ of defendant more or less for some 20 years. Defendant sent him there and paid him for his services. He made scale sheets of the amount cut by plaintiff, and delivered them to him as the work progressed. He testified these represented "correctly the scale of logs put in by Mr. Brooks on this job;" that he made these up from his scale book, which he used while scaling and had with him at all times. He also rendered statements from time to time to defendant, different in form because defendant wanted each kind

of logs kept separate. He testified these "embodied a full and complete statement of that cut." It was shown some of the scaling was done by Brooks' foreman and another man in his employ, under Frost's direction and at his request, at times when Frost was away or the conditions were such that he could not do it all himself. They furnished Frost their measurements, and he computed and entered these scales in his book. He said he went over their logs once in a while to test their accuracy and found them all right; that they did it correctly for him, and he paid them for doing it. Whether or not defendant knew of and consented to this scaling by others to help out Frost is a disputed question of fact.

The contract provided that the scaling should be done by a competent scaler approved by both parties. Defendant claims that Frost was agreed upon, approved, and selected by both parties to do the scaling as agent of both under the terms of the contract. This is denied by plaintiff, who claims that neither would accept the scaler proposed by the other, and they could not agree upon any one; that when defendant finally said he would send down Frost, who was a good scaler in his employ, plaintiff said he did not know him, "but if you send him down, he can scale as long as his scale is satisfactory;" that Frost then came, sent by defendant as his agent, and as such scaled the logs, furnishing his scale to plaintiff, which, as it proved satisfactory, he accepted. As proof of the amount cut by him, plaintiff relied upon the scale sheets Frost had furnished him. Their identity was not disputed. They showed 1,507,969 feet of hardwood, 1,237,728 feet of hemlock, 247,858 feet of cedar, and 19,415 feet of pine. Defendant produced equally identified statements furnished him by Frost, 15 in number, showing 1,399,525 feet of hardwood, 1,019,-929 feet of hemlock, 232,924 feet of cedar, and 22,727

feet of pine. The number of cords of hemlock bark peeled was not in dispute, though there was some controversy as to the manner in which the work was done.

Error is assigned on admission in evidence, against objection, of the scale sheets offered by plaintiff, on the ground that the book from which Frost copied them "was the primary evidence, if there was any," and was not produced; some of the sheets were shown to have been made up from the book after this suit was begun, and some of the scaling was done by others from whom Frost obtained figures of which he had no personal knowledge. The court admitted all testimony offered as to the scaling done by and for Frost, but sustained objections to testimony offered by defendant as to the scale of the logs at his mill and of the lumber cut from them, and a survey of the land from which the timber was cut. Defendant urged such evidence was admissible because of the discrepancy in Frost's scale furnished to the respective parties, it being in effect only estimates as to certain portions, manifestly inaccurate and open to impeachment for fraud or mistake under *Ortman* v. *Green*, 26 Mich. 209.

The court instructed the jury as to the scale in part as follows:

"Both plaintiff and defendant are bound by the scale of Mr. Frost. * * * It is for you to say from the evidence in the case bearing upon this proposition what the scale was; if you are satisfied by a fair preponderance of the evidence that the scale is as claimed by the plaintiff, then, so far as the logs are concerned, you will use such scale as the basis for your computation. If, on the other hand, you do not find that the testimony offered by the plaintiff establishes the true scale, as made by Mr. Frost and others working under him, within the meaning of these instructions, but do find from the evidence in the case some other quantity of timber to be the true scale

made by Mr. Frost, then you will use such amount as the basis of your computation upon this branch of the case."

If, as claimed by defendant, Frost was the agreed, official scaler for both parties, selected as provided for by the contract, and that was a question for the jury, his scale was conclusive, except that fraud or gross mistake could be shown by either party *(Peterson* v. *Reichel,* 143 Mich. 212 [106 N. W. 877]), and it would then be competent for defendant, in view of the apparent discrepancy in the statements, to show, if he could, that the scale Frost furnished plaintiff was in fact grossly incorrect, and to establish by competent evidence what the true scale was. On the other hand, if, as claimed by plaintiff, they were unable to agree upon a regular scaler to represent both, as contemplated by the contract, and by a different agreement defendant's own scaler was to act so long as the scale made and furnished by him to plaintiff was satisfactory, which was a question for the jury, defendant could not repudiate the scale so furnished under his instructions by his agent, and accepted as satisfactory by plaintiff, and after the logs were removed and sawed compel plaintiff to accept a different scale. If the scale furnished by defendant's scaler to plaintiff and accepted by him was the agreed basis between them, it should control.

The contract makes no provision for payment on hemlock, cedar, or pine logs before they were put afloat. Most of these had not been put afloat at the time this suit was begun. Defendant deposited in the bank at Thompsonville $7,800 to apply on the contract. This by the terms of the contract was to be checked out only for labor and supplies in carrying on the logging until the same was completed. Plaintiff's only reason for abandoning the contract is because defendant did not deposit more money for him to check out. It was incumbent upon him, under his

claim of reason for abandoning the contract, to show this money was paid out for labor and supplies. He was to draw the money by check on the deposit, and presumably could furnish bills or other definite evidence of expenditures for labor and supplies in carrying on the contract. He produced no checks or bills, and no evidence whatever, in detail or in gross, as to the cost of labor or supplies. His only testimony on the subject is:

"He did not pay me any more money; he refused to pay me any more money. As a result of that I worked as long as I could on the job and then quit. I have some money of my own in the job. * * * I did not complete the work because I didn't have the money to do so; it was impossible for me because Mr. Bellows would not furnish the money. * * * Mr. Bellows refused to send me more money the 14th of February."

This falls far short of competent proof that the $7,800 deposited by defendant under the contract in the bank at Thompsonville was drawn out "only for labor and supplies, and in no case * * * drawn in excess of the amounts hereinbefore stated."

For the reasons given the judgment is reversed and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.