CHARLES M. DODSON, *et ux.*, *vs.* REMEMBRANCE SWAN, *et al.*

## January Term, 1868.

A court of equity will not lend its aid to enforce a contract growing imme-
diately out of and connected with an illegal or immoral act. Therefore,
where a party purchases land of another at a price greatly less than its
value, if not for the purpose·of taking advantage of the vendor, at least
for the purpose of enabling him to go out of the State and avoid a prose-
cution for felony, a court of equity will not lend its aid to enforce a con-
tract made under such circumstances.

At the February rules, 1866, *Remembrance Swan* filed his
bill in the circuit court of *Marshall* county, against *Charles
M. Dodson, Sarah E. Dodson, Anne Dodson, Newton Dodson,*
and *Samuel Venus*, praying a specific performance of a
contract in writing made on the 4th day of September, 1865,
between the defendants, *Charles M. Dodson* and *Sarah E.* his
wife, and the complainant, which contract was recorded on
the 5th day of September, 1865, in the recorder's office of
*Marshall* county, by which *Charles M. Dodson* and wife bar-
gained and sold to complainant 189 acres of land in the
county of Marshall, and for which complainant agreed to
pay said *Dodson* and wife 3780 dollars, or twenty dollars per
acre, to be paid on or against the first day of January, 1866,
or when complainant was put in possession of a good deed
of conveyance therefor. That at the date of the contract
complainant paid down in part of the purchase money, 275
dollars, and that afterwards he paid, by direction of *Charles
M. Dodson*, sundry notes and judgments amounting to a
large sum of money, which he claimed to be in further part
payment of said purchase money. That on the first day of
January, 1866, complainant, in the county of Marshall,

*Absent from illness.

tendered to said *Dodson* and wife, severally, in United States legal-tender notes, 3020 dollars, the same being equal to or exceeding the full amount of unpaid purchase money on said land—and requested them to execute and deliver to him a deed for the land pursuant to the contract, but they each and both refused to do so. That at the time of complainant's purchase, the legal title to the land was vested in said *Charles M. Dodson* and wife, jointly by a deed executed by *Samuel Venus* and wife to them, dated January 9th, 1856, and that after complainant's purchase of said land, on the second day of October, 1865, *Charles M. Dodson* and wife had conveyed the land to said *Samuel Venus;* and at the time of and before execution of the last named deed, the complainant charged that said *Venus* had actual notice and full knowledge of complainant's prior purchase thereof. That on the 19th day of October, 1865, *Samuel Venus*, by deed of that date, conveyed said tract of land to *Sarah E. Dodson*, his daughter and the wife of *Charles M. Dodson*, for and during her natural life, and after her death to her lawful heirs. Complainant also charged that said *Sarah E.*, at the date of the last named deed, had full knowledge and notice of complainant's prior purchase of the land from said *Charles M.* and *Sarah E.* That partition be made equally of the tract of said land between the complainant and the wife, and that commissioners be appointed for that purpose; and that the cause be referred to a commissioner to ascertain the amount paid by complainant on account of purchase money, and the amount yet due from him thereon, &c.

Answers were filed to the bill by the defendants, *Charles M. Dodson*, *Samuel Venus*, and *Sarah E. Dodson*, by her next friend, and of *Newton Dodson* and *Anne Dodson*, infant children of *Charles M.* and *Sarah E.*, by their guardian *ad litem.* From the answer of *Charles M. Dodson* it appears that respondent was at the date of the contract named in complainant's bill under recognizance with security in the sum of 2,000 dollars to appear for trial at the September term of said court in the year 1865, and the 5th day of September was fixed for the trial, he having been indicted by the grand

jury of *Marshall* county for grand larceny; that on the day preceding, to-wit: the 4th day of September, 1865, respondent visited the house of complainant to procure a settlement of their mutual accounts, and complainant returned with respondent to his (respondent's) house, and told respondent if he (complainant) was in his position he would not stay and take his trial for four times the value of his land or for all *Marshall* county, or words to that effect and other language of a similar nature, and complainant also told respondent that upon settlement of accounts there was no money due from complainant to respondent. Complainant said he would buy respondent's land and give him 20 dollars an acre and would pay him about 150 dollars cash, which would enable respondent to travel and make his escape. Respondent said it was less than he was willing to take for the land, but under the influence of his fears arising from his conversation with the complainant and to secure the immediate possession of some money in order that he might leave the country that night respondent was induced to accept the offer of complainant. After night had set in, on the 4th of September, 1865, the contract was reduced to writing and signed by respondent and wife and complainant; that after the execution of said contract, and about 11 o'clock of the same night, respondent, under the influence of the fear and terror excited by his conversation with complainant, left his house and was absent from the county of *Marshall* about four weeks, when he voluntarily returned again to his home. The tender by complainant to defendants, *Dodson* and wife, of the residue of the purchase money due them on the land was proven. It was also proven that *William Dodson*, who was the surety of *Charles M. Dodson* in his recognizance to appear and answer the indictment at the September term, 1865, of *Marshall* county circuit court, went to complainant at the court-house of *Marshall* county, on the 5th day of September, the day on which *Charles M. Dodson* was to appear and answer the indictment, and asked complainant if he knew anything about *Charles M. Dodson*, and that complainant said he was gone and that

he (complainant) had bought his farm the evening before, and also said at the same time and place to the surety: "You needn't make yourself uneasy about the bail for that is all fixed."

At the September term, 1866, a decree was entered in the cause adjudging said contract binding and valid on *Charles M. Dodson,* but of no legal force or effect and not binding on *Sarah E. Dodson,* the wife, by reason of her coverture; and directing a specific execution of the contract to the extent of the undivided moiety thereof; that the deed of *Charles M. Dodson* and his wife of the 2nd day of October, 1865, to *Samuel Venus* was null and void under and by virtue of the first section of chapter 118 of the Code of Virginia of 1860, and the same was vacated and set aside.

The cause was referred to a commissioner to take an account of the payments made by complainant on the purchase money either to said *Charles M. Dodson* or others, by order of *Dodson,* or under process of attachment at the suit of creditors of *Dodson,* and commissioners were appointed to make partition of the land into moieties, and to assign one moiety to *Sarah E.,* and the other, under the opinion of the court, under the contract of sale, to the complainant.

From which decree *Charles M. Dodson* and *Sarah E. Dodson,* by *Samuel Venus,* her next friend, appealed to this court.

*Lamb & Paull* for appellants.
*Holliday* for appellees.

MAXWELL, J.    This was a bill filed in the circuit court of Marshall county by Remembrance Swann for the specific execution of a contract for the purchase of a tract of land. The bill charges that Charles M. Dodson and Sarah E. Dodson, his wife, on the 4th day of September, 1865, entered into a contract in writing for the sale to the complainant of a tract of 189 acres of land at 20 dollars per acre, or 3,780 dollars, the whole purchase money. The bill charges, and it is shown by an exhibit therewith filed, that the legal title to the said land was in the said Dodson and wife; that the com-

plainant had paid a considerable portion of the purchase money, and that he had tendered and was still ready to pay the residue. The bill charges that Dodson and wife, by a deed subsequent to the sale to the complainant, had conveyed the land to Samuel Venus, who at the time he took such conveyance had full knowledge of the complainant's purchase. The bill further charges that the said Venus, after he received the said conveyance, conveyed the said land to his daughter, the said Sarah E. Dodson, for her life, and afterwards to her heirs. Charles M. Dodson and wife and Samuel Venus and the two children of the said Sarah E. Dodson, who are infants, are made parties defendant to the bill.

The defendants, Charles M. Dodson, Sarah E. Dodson and Samuel Venus each filed separate answers. The infant defendants answered by their guardian *ad litem.* The answer of the defendant, Charles M. Dodson, the only one which I think it necessary to notice, admits the execution of the contract of purchase and sale as charged in the bill, and then proceeds to state the circumstances under which the contract was made. The respondent had been indicted by the grand jury of Marshall county for grand larceny and was under recognizance with security in the sum of 2,000 dollars to appear for trial at the September term of the circuit court of said county in the year 1865, and the 5th day of September was fixed or assigned for his trial. That on the day preceding, to-wit: on the 4th day of September, 1865, the respondent visited the residence of complainant, Swann, to procure a settlement of their mutual accounts and business transactions, and the said complainant returned with him to his own house, and in conversation told him that if he was in the position of the respondent he would not stay and take his trial for four times the value of his place or land, or for all Marshall county, or words to that effect, and other language of a similar nature, and told him, mereover, that upon a settlement of their accounts there was no money coming to him from complainant, &c.; that he (complainant) would buy his place or land and give him

20 dollars per acre, and would pay him about 150 dollars in cash, which would enable him to travel and make his escape. Respondent answered that the offer was less than he would like to take for the land, but under the influence of his fears arising from his conversation with the said complainant, and to secure the immediate possession of some money in order that he might leave the country that night he was induced to accept the offer of complainant.

Respondent further states that his sole motive or inducement for signing said contract was to raise money to enable him to make his escape under the influence of the fear and terror excited by his conversation with said complainant, and that in fact he left his house on the night of the 4th of September, 1865, about 11 o'clock, and was absent from the county of Marshall about four weeks, when he voluntarily returned again to his home. The respondent further shows that at the time of answering he was a prisoner in the jail of Marshall county, and insists that it would be contrary to equity to enforce the contract under the circumstances which attended its execution. The court below rendered a decree to partition the land between Dodson and wife, enforcing the contract against Dodson, but holding it void as against his wife, directing one part to be assigned the complainant and the other to be assigned to said Dodson's wife. By the said decree the deed from Dodson and wife to Venus is declared to be null and void. From this decree Dodson and wife have obtained an appeal to this court. It is claimed here in behalf of the appellants that the decree rendered is contrary to equity and good conscience under the circumstances of the case.

It appears from the evidence in the cause that the land was worth, at the time it was sold, not less than 28 dollars per acre, and that at the time of the sale Charles M. Dodson was under indictment in the circuit court of Marshall county for grand larceny, had been arrested and entered into recognizance with William Dodson as his surety in the penalty of 2,000 dollars for his appearance on the 5th day of September, 1865, which was the day fixed for his trial. It appears

from the evidence, that late at night, on the 4th day of September, the day on which the contract was entered into, Swann was at the house of Dodson, and after he left, Dodson left also, and did not appear on the next day to stand his trial. On the said 5th day of September, Swan took the contract to the recorder of the county of Marshall and had it recorded. On the same 5th day of September, William Dodson, the security of Charles M. Dodson for his appearance, inquired of Swan at the court-house if he knew anything about Charles M. Dodson, and Swan said he had gone, and he had bought his place the evening before; and he further said to William Dodson, "you need not make yourself uneasy about the bail for that is all fixed."

This is, indeed, a most extraordinary case for a court of chancery. Swann had bought the land of Dodson the night before he was to be tried for a felony, at a price greatly less than its true value, and on the day fixed for the trial, is the first person who knows that Dodson is gone, and informs his bondsman not to be uneasy about the bail for that is all fixed; to say the least that can be said for Swann is that he purchased the land from Dodson at a price greatly less than its value, if not for the purpose of taking advantage of him, at least for the purpose of enabling him to go out of the State and avoid a prosecution for felony. Can a court of chancery lend its aid to enforce such a contract, or a contract made under such circumstances? It is well settled that where a contract grows immediately out of and is connected with an illegal or immoral act a court of justice will not lend its aid to enforce it. 1 Story's Equity Ju., section 296; *Armstrong* vs. *Toler*, 11 Wheat., 258; *Wilson* vs. *Spencer, &c.*, 1 Rand., 76.

It is both an illegal and an immoral act to aid or assist a felon to avoid or escape from prosecution or punishment, unless the person rendering such aid or assistance stands in the relation to the accused of husband or wife, parent or grand-parent, child or grand-child, brother or sister, or servant to the offender.

I think, therefore, it was the duty of the court below to

have dismissed the bill. 1 Story's Equity Ju., section 298; 2 *Idem*, section 769; *Burt* vs. *Place*, 2 Cowen, 431.

I think the decree ought to be reversed with costs to the appellants. And this court proceeding to enter such decree as the court below ought to have entered, should dismiss the bill with costs to the defendant below.

The President concurred.

DECREE REVERSED and bill dismissed.