Argued 2 July; decided 21 July, 1902.

**ROBSON v. HAMILTON.**

[69 Pac. 651.]

FRAUDULENT CONVEYANCE—EVIDENCE,

1. A letter from a debtor to a creditor: "If you get in and sue me, it will take the whole place to pay the lawyers with, and you and I will have nothing. You can just do as you please. Either sue me, and be sure of getting nothing, or you can just wait on me, and I will get it when I can,"—and others of similar import, indicated that the execution of a deed twenty-one days later by the debtor of her realty was to put it beyond the reach of her creditors, and were admissible, in a suit to set aside the conveyance, to establish such fraudulent intent.

EVIDENCE OF FRAUDULENT INTENT—RES GESTAE.

2. In a suit to set aside a deed as in fraud of creditors, the grantor's declarations to the notary at the time the conveyance was executed as to intent were admissible as *res gestae*.

DEED TO RELATIVE—BURDEN OF PROOF AS TO GOOD FAITH.

3. Where a daughter conveyed realty to her parents to put it beyond the reach of creditors, the law presumes that they were aware of her fraudulent intent.

CONTRACT AGAINST PUBLIC POLICY.

4. Plaintiff conveyed her realty to defendant in order that she might take her husband and son out of the state to avoid their being prosecuted for a felony. Defendant deeded the same to her parents to put it beyond the reach of her creditors. Plaintiff thereafter sued on the notes given for the purchase price, and recovered judgment. *Held,* that plaintiff could have the conveyance made by defendant set aside, in order to enforce her judgment, as it was not necessary for her, in opening her case, to show that she had violated the law; nor did she need the aid of the original transaction to maintain her suit.

APPEAL—DISPOSITION OF EQUITY CASE ON REVERSAL.

5. Where, in an equitable suit, defendants did not introduce evidence because the court excluded competent evidence offered by plaintiff, the cause will be remanded, on appeal, instead of entering final judgment for plaintiff.

From Linn: REUBEN P. BOISE, Judge.

This is a suit by Elizabeth Robson against Juliett Hamilton and others to set aside a deed to real property, and to subject the premises to the satisfaction of a judgment. It is alleged in the complaint, in substance, that about October 1, 1894, the defendant Juliett Hamilton and one Michael Berrigan, to evidence a part of the purchase price of the real property hereinafter described, executed to plaintiff their four promissory notes, of $300 each, payable in one, two, three, and four years,

respectively, from said date, with interest at 5 per cent per annum; that the three latter not having been paid when due, or at all, she commenced an action in the circuit court for Linn County to recover thereon; that a tract of land consisting of the northwest quarter and the west half of the northeast quarter of section 5, in township 13 south of range 1 west of the Willamette Meridian, in said county, was duly attached therein, and, on October 23, 1900, a judgment was rendered in said action against Mrs. Hamilton for the sum demanded, and said premises were ordered sold, and an execution thereon was returned *nulla bona*; that on October 5, 1896, Mrs. Hamilton, being the owner of said land, which was then and now of the value of $1,400, and of certain personal property of the value of $400, and, being deeply indebted and unable to pay her creditors, for the purpose of hindering and delaying whom, and without any consideration therefor, executed to her mother, the defendant Mary M. Jones, a pretended deed of said premises, which has been duly recorded; that about that time Mrs. Jones advanced to her daughter Mrs. Hamilton the sum of $400, which was afterwards repaid by the sale of personal property belonging to the latter; that Mrs. Jones and her husband, the defendant John H. Jones, have at all times known that the pretended transfer by Mrs. Hamilton rendered her insolvent, and that she made said deed to her mother, to hinder, delay, and defraud her creditors.

Mrs. Hamilton, answering separately, denied that the deed was made to hinder, delay, or defraud her creditors, and alleged that at the time she signed it her father and mother well knew of her indebtedness, and of her probable inability to pay the same; that said deed was made in pursuance of an agreement whereby her parents were to keep and educate her children, and to permit her to make her home with them whenever she so desired, in consideration of which they were to have the use of all that part of said land that should remain after conveying enough of it to plaintiff to pay the sum due her; that, in order more conveniently to carry out the terms of their agreement, she signed and acknowledged the deed to her

mother, and placed it in her trunk until she obtained security for the faithful performance of their contract, but without her knowledge or consent it was taken therefrom and placed on record.

The defendants Mary M. and John H. Jones, answering jointly, denied the material allegations of the complaint, and alleged that the plaintiff and their daughter had entered into a fraudulent agreement, in pursuance of which said judgment was rendered against her, with the understanding that she would not be required to pay any part thereof; that the deed was executed by Mrs. Hamilton to her mother in good faith and for a valuable consideration, and accepted by the latter without any knowledge or notice of Mrs. Hamilton's pre-existing indebtedness; that in May, 1896, Mrs. Hamilton executed to said defendants a note for the sum of $1,000, secured by a mortgage on said land, the consideration for the note being the sum of $400 in money advanced to her, and the settlement of a claim for the board and care of her children, and for the time employed and expense incurred in making a journey from Illinois to Oregon at Mrs. Hamilton's request, which board, care, expense, and time were reasonably worth the sum of $600; that about June 18, 1896, Mrs. Hamilton delivered to said defendant thirteen head of cattle, worth $10 each, the value of which was to be credited on her mortgage note, which could not then be found, but was afterwards discovered in her possession; that in consideration of the cancellation of said mortgage, and the receipt of a cow and a cook stove, and the settlement of said account, and for the future support of Mrs. Hamilton's children, she executed said deed, the consideration for which was paid without notice or knowledge of her pre-existing indebtedness; that since securing the deed, and without notice of any claim upon plaintiff's part, said defendants have made permanent improvements upon said land of the value of $446; and that the real property at the time Mrs. Hamilton's deed was executed was of no greater value than $500, and now worth not more than $946.

41 OR.—16.

The reply put in issue the allegations of new matter in the answer of Mr. and Mrs. Jones; and, at the trial which followed, the plaintiff's counsel introduced their testimony and rested, whereupon the court dismissed the suit, and plaintiff appeals.                                   REVERSED.

For appellant there was a brief over the names of *H. C. Watson*, and *Samuel M. Garland*, with an oral argument by *Mr. Watson*.

For respondent Jones there was a brief over the names of *W. M. Brown, Percy R. Kelly*, and *L. M. Curl*, with an oral argument by *Mr. Kelly*.

MR. CHIEF JUSTICE MOORE, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. The plaintiff's deposition offered in evidence is to the effect that in the summer of 1894 she was the owner of said land, upon which she was then living, and having a son held in the jail of Linn County, Oregon, awaiting examination upon a charge of larceny, the defendant Juliett Hamilton informed her that her husband and another son were liable to be sent to the penitentiary for crimes committed by them, and suggested that if she would convey said land to her, and leave the state with her husband and the latter son, and not return or permit her residence to become known to her friends in Oregon, the son who was in jail could attribute the theft with which he was charged to the brother who had gone away, and thus escape punishment; and, fearing that her husband and other son might be apprehended, she accepted the advice of Mrs. Hamilton, and in pursuance thereof executed to her a bill of sale of certain personal property, and a deed of said land, receiving therefor the promissory notes hereinbefore described and $250 in cash, with which she went to California, leaving her son in jail, and taking her husband and the other son with her, and that she did not correspond with any of her relatives until about October, 1896. Certain letters written by Mrs. Hamil-

ton to plaintiff, and properly identified, were attached to the deposition and offered in evidence; but, having been excluded by the court, they were admitted as "evidence offered, excluded, and excepted to," under the rule prescribed therefor: Laws, 1893, p. 26. The plaintiff, having resided in California since 1894, was unable to state upon her examination whether Mrs. Jones had any knowledge of her daughter's indebtedness prior to accepting the deed from her. J. O. Wilson, appearing as plaintiff's witness, testified that Mrs. Hamilton, prior to securing the deed of the land, said to him, "If you don't give me away, I'll scare them out and get the place." W. C. Peterson, another witness, testified that, as a notary public, he prepared the deed, and took the acknowledgment of Mrs. Hamilton thereto, conveying the land in question to her mother, and that her father was present when the deed was executed. The witness was thereupon asked to state what was said by Mrs. Hamilton at that time, but, an objection having been sustained on the ground that her mother was not present, his answer was received, and marked as "evidence offered, excluded, and excepted to," and is as follows: "She came to my office and made a statement that she owed her father and mother for taking care of her children; that she was in a pressed condition, and wanted to turn the property over to them; that they had had some trouble,—as she put it, she wanted a 'breathing spell.' I reached up and took down a blank from my cases,— a mortgage blank. I presumed she wanted to give a mortgage. And she said, 'No; I want to make a deed, and stop this trouble.'" Before Mrs. Jones can be charged with any participation in the alleged fraud of her daughter, it must appear that Mrs. Hamilton intended, by executing the deed, to place the property beyond the reach of her creditors, with intent to hinder, delay, or defraud them. Her letters to plaintiff tend to show such intention, for in one of them, written twenty-one days before the deed was executed, she says: "I will get you your money if I can. You can fuss at me as much as you please, but you can have no effect on me, as I am a woman of my word. If you get in and sue me, it will take the whole place

to pay the lawyers with, and you and I will have nothing. You can just do as you please. Either sue me, and be sure of getting nothing, or you can just wait on me, and I will get it when I can.'' This letter, and others of similar import, having tended to disclose Mrs. Hamilton's purpose in executing the deed to her mother, were admissible in evidence to establish her fraudulent intent, as a foundation upon which Mrs. Jones' knowledge thereof, if it existed, must have rested; and the court erred in not permitting them to be given in evidence.

2. Mrs. Hamilton's declarations to the notary in her father's presence, made at the time the conveyance was executed, were in respect to the subject-matter, and, as such, constituted part of the *res gestae,* and were admissible in evidence: Wait, Fraud. Conv. (3 ed.) § 276. Thus, as was said by Mr. Chief Justice SHERWOOD in *Snyder* v. *Free,* 114 Mo. 360 (21 S. W. 847) : ''And the declarations made by Mrs. Wing to the notary were evidence, because part of the *res gestae,* and were evidence to show the intent of the grantor in executing the deed, as against her and all persons claiming under her; and those thus claiming property must take it subject to the infirmity attached to it by the conduct of the grantor.''

3. Mrs.|Hamilton's answer avers that she was to have a home with her parents on the land which was conveyed to her mother whenever she so desired, and this allegation is not denied by her codefendants. Whether she availed herself of this provision of their agreement, and resided with them any part of the time, is not disclosed by the testimony; but that fact is unimportant, for, as she is their daughter, the law presumes that they were aware of her fraudulent intent, to rebut which the burden was imposed upon them to show that Mrs. Jones was an innocent purchaser for a valuable consideration, and without knowledge or notice of any intent by her daughter to hinder, delay, or defraud her creditors: *Marks* v. *Crow,* 14 Or. 382 (13 Pac. 55) ; *Jolly* v. *Kyle,* 27 Or. 95 (39 Pac. 999) ; *Feldman* v. *Nicolai,* 28 Or. 34 (40 Pac. 1010) ; *Flynn* v. *Baisley,* 35 Or. 268 (57 Pac. 908, 45 L. R. A. 645, 76 Am. St. Rep.

495) ; *Mendenhall* v. *Elwert,* 36 Or. 375 (52 Pac. 22, 59 Pac. 805).

4. Defendants offered no testimony to rebut the presumption which the law invokes when real property is conveyed by one intimate relative to another, the *bona fides* of which is attacked by creditors alleged to have been defrauded thereby; and the decree should be reversed unless plaintiff's judgment, which forms the basis of this suit, violates the rules of public policy, as being *contra bonos mores.* "Public policy," says Mr. Justice MAGRUDER in *People* v. *Chicago Gas Trust Co.* 130 Ill. 268 (22 N. E. 798, 8 L. R. A. 497, 17 Am. St. Rep. 319), "is that principle of law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." A court of equity will not lend its aid to enforce a contract growing immediately out of, or necessarily connected with, an illegal or immoral act: *Buchtel* v. *Evans,* 21 Or. 309 (28 Pac. 67) ; *Ah Doon* v. *Smith,* 25 Or. 89 (34 Pac. 1093) ; *Bradtfeldt* v. *Cooke,* 27 Or. 194 (40 Pac. 1, 50 Am. St. Rep. 701) ; *Miller* v. *Hirschberg,* 27 Or. 522 (40 Pac. 506) ; *Pacific Live Stock Co.* v. *Gentry,* 38 Or. 275 (61 Pac. 422, 65 Pac. 597) ; *Oscanyan* v. *Arms Co.* 103 U. S. 261. Thus, where a party purchases land of another at a price greatly less than its value, if not for the purpose of taking advantage of the vendor, at least for the purpose of enabling him to go out of the state and avoid a prosecution for felony, a court of equity will not lend its aid to enforce a contract made under such circumstances: *Dodson* v. *Swan,* 2 W. Va. 511 (98 Am. Dec. 787). The test of a violation of the rules of public policy is whether the plaintiff requires the aid of the illegal transaction to establish his right; for, if he cannot open his case without showing that he has transgressed the law, a court will not assist him: *Morris' Run Coal Co.* v. *Barclay Coal Co.* 68 Pa. 173 (8 Am. Rep. 159) ; *Nester* v. *Continental Brewing Co.* 161 Pa. 473 (29 Atl. 102, 24 L. R. A. 247, 41 Am. St. Rep. 894). "If a plaintiff," says Mr. Justice DUNCAN in *Swan* v. *Scott,* 11 Serg. & R. 155, "cannot open his case without showing that he has broken the law, a court will not assist him,

whatever his claims, in justice, may be upon the defendant; and, if the illegality be *malum prohibitum* only, the plaintiff may recover, unless it be directly on the forbidden contract,— a bond, the consideration of which grows out of an illegal transaction.   There the illegal consideration is the sole basis of the bond, and there can be no recovery.   But if a judgment has been rendered on that bond, and another bond is given in satisfaction of it, there the judgment, which must be legal, is the consideration, and the obligor is precluded from entering into the legality of the original transaction.''   In the case at bar the suit is not upon the original contract, but upon the judgment which forms the foundation for, and is the basis of, the relief demanded.   Mrs. Hamilton agreed to pay a valuable and an adequate consideration for the land and personal property which she secured from the plaintiff, but, having failed to pay three of the promissory notes, evidencing a part of the purchase price, judgment was rendered thereon for the sum due.   It was not necessary, therefore, for the plaintiff, in opening her case, to show that she had violated the law, nor did she require the aid of the original transaction to establish her case; and hence the decree must be reversed.

5. Suits in equity are tried anew on appeal, and a final decree is usually rendered in this court, and a cause should not be remanded to the lower court for further consideration unless necessity demands it.   It was incumbent upon the defendants to present their testimony when they had an opportunity, but their failure to do so was evidently induced by a reliance upon the court's excluding competent evidence, to the introduction of which their objections were sustained; and, assuming this to be so, the cause will be remanded for such further proceedings as may be deemed proper, not inconsistent with this opinion.                                        Reversed.