Argued March 5, decided March 26, 1912.

## CALAVAN v. BOWER.

[122 Pac. 300.]

DIVORCE—SUPPORT OF CHILDREN—CONVEYANCE BY HUSBAND IN FRAUD OF WIFE.

1. Evidence *held* sufficient to support a finding that a conveyance by a father to his son pending proceedings by the divorced wife to compel the husband to pay for the past and future support of the minor children given to the custody of the wife was made with a fraudulent intent to prevent the collection of any judgment that the wife might obtain.

DIVORCE—SUPPORT OF CHILDREN—FRAUDULENT CONVEYANCE BY HUSBAND—BURDEN OF PROOF.

2. Where, pending a proceeding by a divorced wife to compel her husband to pay for the past and future support of the minor children given to the custody of the wife, the husband made a conveyance of land to his son for an inadequate consideration, took payment therefor in paper money, and left the country and remained absent, the burden of proof was on the son to show that the conveyance was made in good faith on his part, since the relationship between the parties created a presumption of knowledge on the part of the son of the fraudulent intent of the father.

DIVORCE—SUPPORT OF CHILDREN—FRAUDULENT CONVEYANCE BY HUS-
BAND—EVIDENCE.

3. Evidence *held* to justify a finding that a son obtaining a con-
veyance from his father knew of the fraudulent intent of his father to
prevent the collection of any judgment that might be obtained against
him in a pending proceeding, by the divorced wife to recover for the
support of the minor children given into her custody, justifying the
setting aside of the conveyance.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit by Elizabeth Calavan against Iden L.
Bower and L. Q. Bower, to subject the proceeds of a
certain mortgage to the lien of plaintiff's decree against
L. Q. Bower, and is based upon the following facts:

In 1897 plaintiff, then the wife of L. Q. Bower,
obtained a decree of divorce from him, giving her the
custody of the minor children, but no provision was
made in the decree for their support. L. Q. Bower
paid plaintiff the sum of $1,200 at the time of the
decree, and on July 28, 1909, plaintiff filed a petition
in the circuit court for Marion County, asking that the
decree be opened, and that L. Q. Bower be required to pay
for the past and future support of the minor children.
On August 5, 1909, a citation in this proceeding was
served upon L. Q. Bower, who answered therein, and
on December 16th following, a decree was rendered in
favor of plaintiff for the sum of $1,212, and $29 costs
for the past support of the minors, and requiring L. Q.
Bower to contribute $10 per month for their future
support. At the time these proceedings were instituted,
L. Q. Bower was the owner of an undivided one half
interest in a 44-acre tract of land in Marion County;
the defendant Iden L. Bower, his son, being the owner
of the other half interest. The father also owned cer-
tain city property in Portland. On October 4, 1909,
L. Q. Bower made a conveyance of his Portland prop-
erty for the sum of $2,000. On November 18, 1909, he

conveyed to his son his interest in the 44-acre tract
for the sum of $2,000. Shortly thereafter the decree
was rendered against him, and he left the country. An
execution was issued to enforce the decree against him
for the past support of the minor children and the costs,
and was returned *nulla bona.* In June, 1910, Iden L.
Bower sold the 44-acre tract for the sum of $6,000,
receiving $4,000 in cash and taking a mortgage for
the amount unpaid. Plaintiff brought this suit on
August 6, 1910, praying to have the conveyance from
L. Q. Bower to his son set aside and declared void, and
that the amount on the mortgage should be applied on
the judgment she had theretofore obtained against L. Q.
Bower. L. Q. Bower was served by publication and
made default. Iden L. Bower answered, admitting the
judgment against his father, denying the alleged fraud-
ulent transfer of the land, denying that the conveyance
was made or accepted with intent of either party to
delay or defraud plaintiff, and alleging that he was a
*bona fide* purchaser for full value, without notice of any
fraudulent intent on the part of the grantor, and with-
out notice or knowledge of any claim or lien or of any
interest or right of plaintiff in or to any property of
L. Q. Bower.

There was a decree for plaintiff, and defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of
*Mr. Louis J. Adams* and *Mr. George G. Bingham,* with
an oral argument by *Mr. Bingham.*

For respondent there was a brief over the names of
*Mr. William M. Kaiser, Mr. Myron E. Pogue* and *Mr.
A. G. Thompson,* with an oral argument by *Mr. Pogue.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. We think the testimony fully establishes the fact
that the sale was made with the fraudulent intent on

the part of L. Q. Bower to prevent plaintiff from collect-
ing any judgment she might obtain against him.   It was
made after the proceedings were begun, and shortly
before the judgment was rendered, and taken in   con-
nection with the sale of all the other property a few
days before, and with the fact that he insisted on being
paid in paper money, which is easily carried on
the person, and the further fact that soon thereafter
he left the country and remained absent, satisfy us fully
of his fraudulent intent.

2. This being established  and the relationship of the
parties being admitted, the burden of proof was upon
I. L. Bower to prove affirmatively, by the preponderance
of evidence, that he was a *bona fide* purchaser for value,
without notice of the fraudulent intent of his father,
the grantor.  Whatever may be the rule in other jurisdic-
tions, it is established in this State by a long series of
decisions that, where the conveyance is from a near
relative, whose fraudulent intent is shown, the rela-
tionship creates such a presumption of knowledge of
that fraudulent intent on the part of the grantee as to
place the burden of proof of a *bona fide* purchase upon
him.  See *Robson* v. *Hamilton,* 41 Or. 239 (69 Pac. 651),
where all the decisions of this court are collated.  The
holding in these cases is reiterated in *Stubling* v. *Wilson,*
50 Or. 282 (90 Pac. 1011: 92 Pac. 810), and is now
the settled rule in this State.

3. While we are satisfied from the testimony, which
we shall not recount in detail, that I. L. Bower paid
something near an adequate price for the lands, we do
not think he has overcome the presumption raised by
his relationship that he knew of his father's fraudulent
intent.  In the first place, the purchase took place after
he had been informed of the pendency of the suit, and
after he had information that his father had sold all
his other property.  It is in evidence that about the

time of the purchase, whether immediately before or after seems uncertain, a neighbor suggested to him that, on account of the suit, he might get into trouble and lose some money, and that he replied, "There has been no injunction; nothing to prevent the sale," which indicates that he had been giving more attention to the legal consequences of the transaction than is common among farmers. Added to this is the fact that his father insisted on being paid in paper money at the bank, and that he himself had drawn, and had on hand outside the money checked from the bank, $800 in paper money, which he paid his father. This indicates to us that he was assisting him to turn his property into a kind of currency that could be easily carried in large sums about the person in case of flight. The unwillingness of the average person in the northwest to receive large quantities of currency is a matter of common knowledge. It is true that he says he had drawn the $800 of currency for the purpose of a contemplated trip to Alberta, but he did not know whether he would go, or exactly when he would go. That he would carry this money about him for some time, when he had an account at the bank and was a frequent depositor of large sums, is such unusual conduct as to throw suspicion upon this part of his testimony.

The circuit judge had all the witnesses before him and heard their testimony personally, and, in cases of this character, he is better qualified to judge of the value and effect of the evidence than we, who only have it in cold type; but, as it is, we think the decree was justified by the evidence, and it is affirmed.

AFFIRMED.