Argued January 25; reversed March 26; rehearing denied
April 16, 1935

# SOUTHEAST PORTLAND LUMBER CO. *v.*
## COREY ET AL.

(42 P. (2d) 931)

*Ashby C. Dickson* and *C. D. Purcell,* both of Portland (Glenn Parker, of Portland, on the brief), for appellants.

*Chas. W. Redding,* of Portland (B. A. Kliks, of McMinnville, on the brief), for respondent.

BEAN, J. It appears that during the time of operation under the contract in 1931, both parties had a representative to scale the logs delivered at the mill pond. There is no disagreement in regard to the scale during that year, but there is controversy over the computation of the number of feet in logs of 42 feet and over in length. During the time of operating in 1932 Corey asserts that he was unable to have a representative at the mill pond, and had the same man, W. H. Pearce, who scaled for him at the mill pond during 1931, scale the logs at a service station on the route to the mill.

At the trial plaintiff testified in regard to the note, and the amount that had been paid thereon, and claimed a balance of $1,735.25 still due on the note. We find no mention made by the officers of the plaintiff in regard to the scaling of logs or the delivery of logs. The plaintiff was authorized by defendant to pay loggers for logging and haulers for hauling the logs and for gasoline and other expenses incurred in the delivery of the logs.

■ After plaintiff rested its case, W. H. Pearce was called as a witness for defendant, and, after preliminary

questions, was presented with instruments, and he stated that they were documents on which he kept track of the scale, and that he was the scaler employed by Corey in his operation of selling logs to plaintiff. Upon the documents being offered in evidence, they were objected to by plaintiff for the reason, among others, that the defendant failed to furnish a representative to scale the logs at the mill pond, and in so doing he would be bound to accept the scale of the representative of plaintiff. The court ruled that defendant was bound by the contract, and the objection was sustained. Defendant Corey contended that the change in place of scaling the logs was made by oral agreement, subsequent to the written agreement. The plaintiff objected to the introduction of any testimony that there had been an oral agreement modifying the written agreement, because there was no pleading to that effect, whereupon counsel for defendant asked the court for permission to amend defendant's pleading showing that the parties afterwards modified the contract. The court ruled that as defendant had over a year to make up his pleadings, no amendment should be permitted. Defendant failed to tender his testimony in regard to the scale made by Pearce at that time. Later in the case the defendant offered the statement of a computation of the number of feet of logs over 40 feet during 1931, according to the "Official Columbia River Log Scale Sheet, Revised Long Log Scale—Allowing Taper on Logs Over 40 Feet in Length," approved 1931 by Columbia River Log Scaling and Grading Bureau, showing a difference in the figures which plaintiff had furnished to Corey. This computation shows an increase of 3,386 feet, log scale, of logs over 40 feet in length delivered during 1931 and scaled at the mill pond at the prices then paid by plaintiff to defendant Corey, amounting to $35.92;

also statement of computation of logs over 40 feet in length during 1932, giving the number of feet in each of such logs and the difference in the two methods of computing, making a difference in favor of defendant of 25,594 feet, amounting to $218.30, or a total difference in the price of the logs by reason of the difference in the computation of logs over 40 feet in length for both years, amounting to $254.22. This statement, showing the computation of the number of feet of logs over 40 feet in length, was objected to by defendant. The objection was sustained and the documents were admitted under the rule, but were not considered by the court or referee. We think defendant Corey should be credited with this amount on the mortgage note. The books and sheets containing the figures of the scale made by W. H. Pearce for Corey, but no computation, were tendered and admitted over objection and marked as exhibits.

After the testimony of plaintiff in chief was taken and some of the testimony of defendant, the court found that there were lengthy accounts involved, and appointed Livy Stipp referee to take the testimony and report it to the court. The court ruled that "You cannot vary the terms of a written contract by parol". Counsel for plaintiff informed the referee in regard to the ruling of the court. Although the court, at the time of appointing the referee, said "he can take any testimony he desires in regard to those accounts to determine how much has been paid on this note and mortgage", still there seems to have been some misunderstanding on the part of defendant Corey as to just what was to be done before the referee, and it appears that counsel for defendant Corey understood that the referee was to take the testimony in regard to the accounts that had been furnished by plaintiff to defendant

in regard to payment of expenses of logging, hauling the logs, and gasoline and various accounts, and did not understand that the whole testimony in the case would be submitted to the referee.

■ A written contract, except when prohibited by law, may be modified or annulled by a subsequent valid oral agreement of the parties: *City Messenger Co. v. Postal Tel. Co.,* 74 Or. 433, 441 (145 P. 657) ; *Zanello v. Smith & Watson Iron Works,* 62 Or. 213 (124 P. 660) ; *Pippy v. Winslow,* 62 Or. 219, 224 (125 P. 298).

Defendant Corey contends that he had not offered all of his testimony in regard to the scale of logs in 1932. There is, however, a large number of sheets of paper marked as defendant's exhibits, containing the scale of the logs made by Pearce for defendant in 1932 at the service station. They are not, however, in condition for the court to pass upon them, but might be understood by an expert or log scaler.

■ The difference between the number of feet, log scale, of logs credited by plaintiff to defendant and the number of feet claimed by defendant Corey according to his scale, which difference is 143,281 feet, amounting, at the prices agreed upon, to $1,248.88, suggests a gross error or fraud, and, although the arrangement during the second year for the scaling of logs was not carried out, we think that defendant should be permitted to introduce his scale of logs during the operating season of 1932 and have the same considered for what it is worth. On this point the defendant Corey claims that he did not get statements from plaintiff so as to compare, or check up, until from one to three months after the time for such statements so comparison could be made of the discrepancies, as suggested in the contract.

■ There is authority that measurements of logs made at times and places other than those mentioned in the contract between the parties are admissible in evidence for the purpose of showing such gross mistake as would necessarily imply bad faith, or to show fraud: 38 C. J. 202, § 108; *Ozan Lbr. Co. v. Haynes,* 68 Ark. 185 (56 S. W. 1068) ; *Peterson v. Reichel,* 143 Mich. 212 (106 N. W. 877).

In *Ozan Lbr. Co. v. Haynes,* supra, plaintiff sued defendant for a balance of $750. The defendant-appellant caused another party to cut some of the timber for plaintiff. There was involved the price of hauling saw logs, the difference being the alleged difference in measurement of the same, or, as it is called among mill men, "the scaling". The appellant contended that the log hauling should be paid for by the scaling at the mill, and by that only, because in the contract they agreed to make the scaling at the mill the criterion by which the hauling should be estimated, and that evidence of scaling elsewhere would be inadmissible. It was contended by respondent that the correctness of the scaling at the mill could be impeached by correct scaling elsewhere, and that his testimony was for that purpose and to that effect. The court said the ruling laid down in *Hot Springs Ry. Co. v. Maher,* 48 Ark. 522 (3 S. W. 639), was applicable to the question, and stated:

"Where a question as to quality, quantity or manner of construction of work to be done is left to be decided by an engineer in charge, and it is agreed that his decision shall be final, his decision cannot be questioned by either party, except for fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment. The same would be true of an agreement as to one person to scale, or one place of scaling. Notwithstanding the agreement, neither decision nor manner of estimating is conclusive on the

parties, but evidence may be adduced to show fraud, gross mistake or bad faith, and the matter corrected in this way, so as to do justice.''

In *Cavanaugh v. Barnard,* 83 N. H. 370 (142 Atl. 700), it appears that plaintiff contracted to operate a certain lot for defendant from stump to stick for $10 per thousand feet, mill measure. As the work progressed, the defendant measured approximately 175,000 feet and was satisfied that the plaintiff was measuring the cut lumber correctly. He paid plaintiff in full each week, according to the mill survey, so that when the work was finished the plaintiff had been paid in full and defendant had accepted the lumber. The plaintiff let the contract for chopping, logging and sticking the lumber, to an independent contractor, who was paid by plaintiff on the basis of the mill measurement. The total amount of lumber sawed, according to the mill measure, was 1,052,862 feet. Defendant offered to prove that when he sold the lumber the survey of his several consignees at destination showed a shortage below the mill survey of 407,730 feet, and that when the alleged shortage first became apparent he had shipped all but about 7,000 feet of the lumber, and that he immediately notified plaintiff of this fact and stopped payments on the lumber which plaintiff was then cutting. Afterwards, under plaintiff's instruction, the balance of the lumber was shipped. Defendant did not claim that either Cavanaugh or McCaffrey was personally guilty of fraud, but contended that the discrepancy between the mill scale and the consignees' scale, taken in conjunction with the acts of the agents who were directly under plaintiffs' supervision, constituted sufficient evidence from which the jury could find that the mill survey, as returned each week by plaintiffs' marker, was fraudulent. All the proffered evidence was

excluded, subject to exception, with the ruling that in the absence of fraud defendant was bound to pay according to the mill survey. The court said:

"Fraud will not of course be implied merely from doubtful circumstances. * * * Consequently, it cannot be established by showing a slight discrepancy between two scales of lumber and nothing more. Bechard v. Amey, 82 N. H. 462, 467. But here the defendant has offered to prove that the discrepancy was very great; * * *.

* * * The difference between the scales was too substantial to have resulted from a mere mistake. It was evidence of some fraud in connection with one scale or the other. All the proffered evidence was therefore competent." See *Sweeney v. Jackson County,* 93 Or. 96 (178 P. 365, 182 P. 380), where a similar principle is enunciated, and where several authorities are cited.

■ Corey's answer alleges that plaintiff rendered an improper and inaccurate and unjust scaling of said logs, setting out the particulars. We think the answer is sufficient upon which to base testimony, showing error in the scaling of said logs by the plaintiff.

In *Robson v. Hamilton,* 41 Or. 239 (69 P. 651), Mr. Justice MOORE stated:

"Suits in equity are tried anew on appeal, and a final decree is usually rendered in this court, and a cause should not be remanded to the lower court for further consideration unless necessity demands it. It was incumbent upon the defendants to present their testimony when they had an opportunity, but their failure to do so was evidently induced by a reliance upon the court's excluding competent evidence, to the introduction of which their objections were sustained; and, assuming this to be so, the cause will be remanded for such further proceedings as may be deemed proper, not inconsistent with this opinion."

The decree in this case must be changed. Under the circumstances of this case, we think that it should be remanded to the circuit court for the introduction and consideration of testimony in regard to the scale of logs delivered in 1932, made for defendant, with all the circumstances touching same. Defendant should have a computation made by some competent person, of the scale of logs, made by W. H. Pearce, which were delivered in 1932, other than the scale of logs over 40 feet in length, above-mentioned, and arranged in condition to be offered in evidence, which might be something similar to "Statement of Logs over 40 feet".

There is some slight difference in regard to 7,909 feet of larch timber, part of which plaintiff allowed $12 and a part $9 per thousand. Defendant claims $12, and states that he sold some at that price at another place. The testimony does not show whether that is the reasonable market value or not, or what the agreed price was, and we make no finding in regard to it. Neither do we intend to express any opinion in regard to the scaling of logs in 1932, but we think that defendant should have a full hearing in regard thereto.

■ There were approximately 440,000 board feet of saw logs located on the premises, at the time of the suit, and approximately 480,000 board feet of down timber which were foreclosed with the real estate. Defendant contends that these logs and down timber were personal property after the same were severed from the real property and that they were not subject to the lien of the mortgage. The contract made in connection with the mortgage, Exhibit A, attached to defendant's answer, provides, in substance, that Corey would be permitted to cut the timber on the land upon the express condition that said timber, as cut, should be delivered to plaintiff in accordance with this contract,

and "that said second party's mortgage lien shall remain upon said timber as cut until delivered, scaled and accepted by said second party at its mill". If this question becomes material, we think that the logs referred to would be subject to the mortgage. Whether Corey would be equitably entitled to compensation for cutting such timber, we do not determine, as in any event it would depend upon all of the circumstances.

Defendant questioned the payments that had been made, by plaintiff on behalf of defendant for logging, to defendant's loggers and haulers and for gasoline and expenses, some of which were authorized by defendant before the payments were made and others were ratified by defendant. In so far as payments made by plaintiff are concerned, these various items, we think, are shown by the testimony to be correct, and such payments are therefore approved.

The decree of the circuit court will be reversed and the cause and transcript of testimony remanded for the taking of further testimony, and for such further proceedings as may be deemed proper, not inconsistent herewith.

No costs will be awarded to either party until the final determination of the suit.

CAMPBELL, C. J., and BAILEY and RAND, JJ., concur.