Argued April 19; reversed May 16, 1939

In re Braun's Estate

# STATE LAND BOARD OF OREGON *v.* PORTLAND TRUST & SAVINGS BANK

(90 P. (2d) 484)

In Banc.

*Sanderson Reed,* of Salem (I. H. Van Winkle, Attorney General, and J. A. Beckwith, of Portland, on the brief), for appellant.

*C. H. Greene,* of Portland (Beach, Simon & Greene, of Portland, on brief), for respondent.

*Robert G. Clostermann,* of Portland, for heirs of Fritz Braun.

BAILEY, J. The state land board has appealed from an order of the circuit court for Multnomah county, department of probate, overruling the objections filed by the state land board to the final account of the administrator of the estate of Fritz Braun, deceased. In that order the court decreed that the decedent left surviving him as heirs at law two brothers and two sisters, all residents of Germany, and denied the land board's petition requesting that the administrator of the estate be ordered to transmit to the state treasurer the clear proceeds of the estate, on the ground that the decedent died without heirs. The land board also appealed from another order of that court in this proceeding, which will hereinafter be discussed in detail.

Fritz Braun died intestate July 26, 1937, while confined as an inmate of the state hospital in Salem, Oregon. At the time of his death he was about 67 years of age. His estate was appraised at $3,048.30. For more than 10 years preceding his death, the Portland Trust &

Savings Bank had been acting as the guardian of his estate. Upon Braun's death that bank filed a petition to be appointed administrator of his estate, in which it was alleged that, as far as the petitioner had been able to ascertain, the decedent "left no wife, children, father or mother surviving him, nor has petitioner been able to ascertain the names, places of residence or relationship of any other heirs of said decedent". Thereafter the bank was duly appointed and qualified as administrator of the estate.

Shortly after the appointment of the bank as administrator Mr. Irelan, its assistant trust officer, who was actively in charge of the estate, discovered in the files in the guardianship proceeding a letter addressed to him as assistant trust officer and signed by Dr. J. C. Evans, acting superintendent of the Oregon state hospital, in which Dr. Evans stated that he had been instructed by Dr. Steiner, superintendent of the state hospital, to "enclose to you certain addresses of relatives in the case of Mr. Braun". The letter further stated that those relatives had been informed in letters of the details of Mr. Braun's condition. The enclosure gave the names and addresses of the following as relatives of Fritz Braun: Mary Cronk, sister, Peekskill, New York; Anna Perger, sister, 340 Perger street, Frankfort-on-the-Main, Germany; August Braun, brother, Frankfort-on-the-Main, Germany.

On July 28, 1937, Mr. Irelan addressed letters to all the three above named as relatives, informing them of the death of Fritz Braun, stating that it was the understanding of the administrator that they were the decedent's only surviving relatives, and asking them to state whether that information was correct. Answers were received from all three of those individuals.

Mary Cronk wrote that she was unmarried and therefore the decedent could not have been her brother, and that she was not otherwise related to him. August Braun replied that he was a brother of the decedent and that Fritz Braun left surviving him, in addition to August, a brother named Ernst Braun, a sister, Sophie Braun, and another sister, Mrs. Anna Bingemer, residing at 340 Berger street, Frankfort-on-the-Main. In this letter it was stated that there had been a mistake and the latter sister's name was not Anna Perger. The addresses of all these alleged relatives are set forth in the letter of August Braun, and the ages of all of them except Anna Bingemer. A letter was also received by the bank from Anna Bingemer, in which she stated that there had been an error in regard to her name, and she confirmed the statement of August Braun as to who were the heirs of Fritz Braun, giving their addresses and ages. In both letters the writers stated that they did not know Mary Cronk. Further correspondence was had between the bank officers and some of the alleged heirs of the decedent residing in Germany.

The above mentioned letters from the alleged heirs of the decedent were written in German and at the instance of the administrator were translated into English by Robert G. Clostermann, the German consul in Portland. These letters and the English translations thereof were introduced in evidence and made a part of the record.

After being advised by the administrator that the only possible heirs of the decedent were citizens and residents of Germany, the German consul in Portland communicated with the supposed heirs in Germany and procured from August Braun what is denominated a

declaration in proof of heirship, which document appears to have been properly sworn to before a judge of a court of record and duly authenticated by a judge of a higher court. It is further given authenticity by the certificate of the United States consul at Frankfort. This declaration of August Braun sets forth the names of the surviving heirs of the decedent, in accordance with the statements contained in the letters of August Braun and his sister, Anna Bingemer. The German consul also procured a certified copy of the marriage record of Anna Bingemer to Carl Bingemer, and another statement by August Braun in the form of an affidavit sworn to before the United States consul at Frankfort, setting forth the names of the living heirs of the decedent. Mr. Clostermann further procured what is apparently a photostatic copy of part of a record, designated by him in his translation as "extract from the family register at Pforzheim, No. 1011". This excerpt, which is not certified, purports to contain biographical data concerning the family of Jakob Frederich Braun, including the date of the latter's marriage, the birth of eight children to that marriage, one of them named Jakob Frederich, and the deaths of three of the children in 1869, 1879 and 1918, respectively.

The originals of all these documents, except the affidavit of August Braun, with translations into English, were turned over to the administrator of the estate by the German consul and attached by the administrator to its final account as part of that account. The affidavit of August Braun, which was written in English, was attached to the power of attorney given by the alleged heirs to Clostermann, and both were by him filed in the probate proceedings.

In the final account the administrator sets forth that the decedent died leaving as his sole heirs at law

the following: Sophie Braun and Anna Barbara Binge-mer, nee Braun, sisters, and Karl August and Ernst Braun, brothers. The respective places of residence in Germany of these purported heirs are also therein designated.

To this final account the state land board filed objections, stating therein that the proof of heirship contained in the final account is insufficient, and alleging affirmatively that it appears from the record that the decedent died intestate and without heirs, and that therefore the proceeds of his estate should escheat to the state of Oregon for the benefit of the common school fund. The land board asks that an order accordingly be made escheating to the state of Oregon the net proceeds of the estate.

██ Section 11-1201, Oregon Code 1930, as amended by § 1 of chapter 365, Oregon Laws 1933 [see § 11-1201, Oregon Code 1935 Supplement], and further amended by chapter 12, Oregon Laws Special Session 1935, provides that "the county court before whom" probate proceedings in the estate of an intestate are pending shall determine whether there are any legal heirs to the estate, and if the court determines that there are no legal heirs, the administrator is required to pay over to the state treasurer for the common school fund the proceeds of the estate. It was held in *In re Wakefield's Estate*, ante p. 330, 87 P. (2d) 794, 89 P. (2d) 592, on petition for rehearing, that under § 11-1201, *supra*, the state land board had a right to appear in probate proceedings and assert that the estate should escheat to the state of Oregon for lack of legal heirs. Upon the appearance of the state land board, it may be observed, the establishing of heirship in a probate proceeding loses the character of an *ex parte* showing and thenceforth

the question of heirship is a fact to be proved as any other contested matter.

At the hearing on the objections to the final account all the correspondence and documents above referred to were admitted in evidence, subject to the objection of the state land board that the same were incompetent to establish heirship of the alleged brothers and sisters of the decedent. In support of this objection, the state land board asserted in the trial court and contends on this appeal that the affidavits were taken *ex parte*; that the admission of the affidavits and correspondence deprived the land board of the right of cross-examination; and that such documentary evidence was not to be considered as admissions against interest of the parties, but rather as self-serving statements.

In the petition for the appointment of an administrator it is not alleged, as contended by the state land board, that the decedent died without heirs, but it is stated that the decedent left no wife, children, father or mother, and that the petitioner is unable to ascertain the names or relationship of any other heirs. The documentary evidence admitted was relevant and competent to show that the administrator was justified, at the time it filed its final account, in believing that the decedent did not die without heirs. Those documents, however, were not competent evidence in a contest as to heirship to establish that the members of the Braun family in Germany, referred to therein, were the brothers and sisters of the deceased.

The letter from the acting superintendent of the Oregon state hospital does not purport to be, and is not, a certified copy of any record on file in that institution, and therefore it has no evidentiary value to determine the one question here involved, that is, whether

the decedent died without heirs. The correspondence between the trust officer of the bank and certain individuals in Germany likewise is incompetent to establish heirship. The sworn statement of August Braun was made *ex parte* and without opportunity to the state land board to cross-examine the affiant.

The testimony of a witness may be taken in three modes: (1) by affidavit; (2) by deposition; and (3) by oral examination: § 9-1201, Oregon Code 1930. An affidavit is defined as a written declaration under oath made without notice to the adverse party: § 9-1202, Oregon Code 1930. An affidavit may be used for certain definite purposes, such as "to prove the service of a summons, notice, or other paper in an action, suit, or proceeding to obtain a provisional remedy, the examination of a witness, or a stay of proceedings, or upon a motion, and in any other case expressly provided by this code or other statute of the state, except as provided in the next section": § 9-1301, Oregon Code 1930. Section 9-1302, Oregon Code 1930, is to the effect that when a provisional remedy has been allowed upon an affidavit, the party against whom it is allowed may require the person making the affidavit to be produced before some officer authorized to administer oaths, for cross-examination.

Section 9-1501, Oregon Code 1930, provides that "in all cases other than those mentioned in § 9-1301, where a written declaration under oath is used, it must be a deposition as prescribed by this code."

The affidavits in the instant case were not used for any of the purposes mentioned in § 9-1301, *supra*. Neither has our attention been called to, nor have we been able to find, any other provision elsewhere in the code or other statutes of this state which expressly per-

mits the use of affidavits to establish facts such as here in dispute.

▮ The photostatic copy of the "extract from the family register at Pforzheim" is not certified or even identified by affidavit. Section 9-628, Oregon Code 1930, as amended by chapter 102, Oregon Laws 1937, provides that documents of any class other than those specifically mentioned therein, of a foreign country, may be proved "by the original or by a copy certified by the legal keeper thereof, together with a certificate under the great or principal seal of the country or sovereign thereof, or under the hand and seal of the American consul residing in such foreign country nearest the place where such record is kept, that the document is a valid and subsisting document of such country, and that the copy is duly certified by the officer having the legal custody of the original." The photostatic copy above mentioned is not certified in accordance with the requirements of the foregoing statute, nor are the affidavits which were executed in Germany records of that country, as contended by the administrator, so that the originals could be received in evidence.

No evidence whatever was introduced on behalf of the state land board, and the only evidence introduced by the administrator or by the German consul, who appears to have been representing the purported German heirs in this proceeding, that could be said in any way to tend to indicate that the decedent died leaving heirs, is the documentary evidence above discussed. Therefore, there is no competent evidence before this court to prove whether or not the decedent left legal heirs surviving him.

▮ In appeals in suits in equity, this court tries each case *de novo* on the record made in the trial court. Inasmuch as the record herein is wholly lacking in admis-

sible evidence on the main issue involved, this court in furtherance of justice deems it advisable to remand the cause to the circuit court with permission to those claiming to be heirs to present competent evidence in support of their representations. Remanding suits in equity for further proceedings under such circumstances has the sanction of this court as well as those of other jurisdictions: *Southeast Portland Lumber Company v. Corey,* 150 Or. 97, 109, 42 P. (2d) 931; *Knapp v. Wallace,* 50 Or. 348, 357, 92 P. 1054, 126 Am. St. Rep. 742; *Robson v. Hamilton,* 41 Or. 239, 246, 69 P. 651; *Smith v. Wilkins,* 31 Or. 421, 51 P. 438; *Branson v. Oregonian Railway Co.,* 10 Or. 278, 297; *Abrams v. Rushlight,* 157 Or. 53, 64, 69 P. (2d) 1063, 111 A. L. R. 1292. See also, in this connection, 4 C. J. 1194, 1200, §§ 3232 and 3240.

■ Chapter 399, Oregon Laws 1937, provides as follows:

"The right of aliens not residing within the United States or its territories, to take personal property or the proceeds thereof in this state by descent or inheritance, is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take personal property or the proceeds thereof in like manner within the countries of which said aliens are inhabitants or citizens, and upon the right of citizens of the United States to receive, by payment to them within the United States, or its territories, moneys originating from estates of persons dying within such foreign countries. In the event no heirs other than said aliens are found eligible to take such property, said property shall escheat to the state of Oregon, as provided by law in those cases where a person shall die intestate without heirs."

Fritz Braun died July 26, 1937, and the record fails to disclose any evidence to the effect that at the time

of his death citizens of the United States had a right to receive payment to them within the United States of moneys originating from estates of persons dying within Germany, of which country the alleged brothers and sisters of Fritz Braun are residents and citizens. It would appear that under the foregoing statute it was incumbent upon such brothers and sisters to prove that they were not precluded from receiving personal property as heirs of the decedent.

The state land board filed two motions, one to require the attorney acting for the administrator to produce and prove the authority under which he appeared on behalf of the alleged German heirs, and the other, to require the administrator of the estate to prove the authority by which it acted on behalf of such individuals. These motions were denied, and the land board has attempted to appeal from the order denying them. It was entirely within the discretion of the circuit court to deny such motions, and we find no abuse of discretion in that respect.

The order of the circuit court determining that the decedent left as his heirs at law two brothers and two sisters, all residents of Germany, is reversed and the cause is remanded to the circuit court for further proceedings not in conflict with this opinion.

LUSK, J., not participating.