Argued May 6, affirmed May 26, 1914.

# WALLOWA LAKE AMUSEMENT CO. *v.* HAMILTON.

## (142 Pac. 321.)

### Contracts—Construction—Province of Court.

1. Under Section 715, L. O. L., providing that the language of a writing is to be interpreted according to the meaning it bears in the place of its execution, unless the parties have reference to a different place, the office of the judge in the construction of contracts is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.

[As to evidence to explain words used in written contract, see note in 122 Am. St. Rep. 545.

### Mortgages—Construction—Intention of Parties.

2. Under Section 716, L. O. L., providing that in the construction of an instrument the intention of the parties is to be pursued if possible, where a mortgage provides that the mortgagee agrees to release from time to time portions of the land in quantities of not less than half an acre each on the request of the mortgagor and payment by him of $30 for each and every half acre desired to be released, the mortgagor, on making request therefor and paying or tendering payment at $60 per acre, is entitled to have released land specified by him to the number of acres so paid for.

### Mortgages—Construction—Provision for Partial Release.

3. Under a mortgage provision that the mortgagee should release from time to time portions of the land on payment of $30 for each half acre to be released, the amount of payment required to entitle the mortgagor to such release before any payment on the mortgage became due is $60 per acre, though the amount of the next payment to become due would exceed the amount so paid.

### Mortgages—Payment—Sufficiency of Tender.

4. Under a mortgage provision for partial release on payments by the mortgagor at $30 for each half acre, the fact that a tender was conditional on the execution of a partial release did not affect the sufficiency of the tender.

[As to sufficiency and effect of tender, see notes in 77 Am. Dec. 470; 30 Am. St. Rep. 460.]

### Mortgages—Payment—Waiver of Tender.

5. Where a mortgage provided for partial release on payments by the mortgagor at $30 for each half acre, the refusal of the mortgagee to execute such release for the reason that its execution would weaken the security was a waiver of the necessity for a tender by the mortgagor.

### Specific Performance—Evidence—Weight and Sufficiency.

6. In a suit for specific performance of a provision in a mortgage for a partial release on partial payments by the mortgagor, evidence

*held* to show that the mortgagor had made an actual tender of payment entitling him to a release.

**Evidence—Weight and Sufficiency—Positive and Negative Evidence.**

7. When witnesses are of equal credibility, positive evidence is entitled to more weight than negative evidence as to the same transaction.

From Wallowa: JOHN W. KNOWLES, Judge.

In Banc.    Statement by MR. JUSTICE RAMSEY.

This is a suit by the Wallowa Lake Amusement Company, a private corporation, against Joseph L. Hamilton for specific performance of a contract. The court below rendered a decree in favor of the plaintiff for the relief prayed for by it, and also a decree of foreclosure of a mortgage in favor of the defendant on a counterclaim. The defendant appeals from that part of said decree rendered in favor of the plaintiff. The plaintiff did not appeal. The facts appear in the opinion of the court.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Daniel Boyd.*

For respondent there was a brief with oral arguments by *Mr. A. W. Schaupp* and *Mr. John P. Rusk.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit in equity to obtain a decree for the specific performance of a contract. The pleadings are too lengthy to be set out. No questions are raised as to their sufficiency. The plaintiff on May 6, 1911, purchased from the defendant about 138 acres of unimproved land, lying on the south side of Wallowa Lake in Wallowa County. This land is described in the second amended complaint, which will be referred to *infra,* as "the complaint." The plaintiff was to

pay $8,320, or approximately $60 per acre, for this land.    The plaintiff paid $1,000 in cash, and on the 6th day of May, 1911, executed a purchase money mortgage to the defendant on said land for the sum of $7,320, the balance of the purchase price thereof.    The plaintiff executed to the defendant four promissory notes for said sum of $7,320.    One of said promissory notes was dated May 6, 1911, and was for $1,000, and was payable on or before September 1, 1912.    Each of said notes bore interest from May 6, 1911, at eight per cent per annum, payable annually.    All interest on said $7,320 to May 6, 1912, was paid by the plaintiff.    This suit was commenced on the 26th day of August, 1912.    Said mortgage contains, *inter alia,* the following covenant, to wit:

"It is hereby agreed between the grantor and the grantee herein, that the grantee agrees to release, from time to time, from the lien and operation of this mortgage, portions of the land herein described in quantities of not less than one-half acre each, upon the request of the grantor herein, its successors or assigns, and upon the payment by said grantor, its successors, or assigns, of the sum of $30, for each and every half acre desired to be released. * * It is also agreed that all payments made by grantor, its successors, or assigns, upon this mortgage and the notes secured hereby are to be applied at the time of payment, first to interest, and then to first next maturing notes."

This suit was brought upon the covenant set out *supra* to obtain a decree compelling the defendant to release from the lien and effect of said mortgage 13 acres of said land, described in the complaint.

The sixth, seventh, and eighth paragraphs of the complaint are as follows, omitting the description of the 13-acre tract that the plaintiff desired released:

"(6) That plaintiff has duly kept and performed all the conditions of said covenant on its part to be kept

and performed, and that, On or about the 21st day of August, 1912, in Wallowa County, Or., plaintiff tendered to defendant, Joseph L. Hamilton, in person the sum of $780, the sum necessary to secure the release of 13 acres of land included in said mortgage, according to the covenants thereof, and requested that defendant release from said mortgage 13 acres of the land described therein, and designated the same to defendant, and that said defendant refused to release said 13 acres, or any part thereof, or any of said land at all, and that at the same time and place plaintiff tendered to defendant in person the further sum of $245.50, making a total of $1,025.50, so tendered by plaintiff to defendant, being the amount, in full, necessary to pay in full the note mentioned and described in said mortgage for the sum of $1,000, and to become due September 1, 1912, and requested and insisted that defendant release to plaintiff 13 acres of said land, and that defendant refused to make such release.

"(7) That after said offer and request, upon the aforesaid date, plaintiff demanded from defendant a release of said 13 acres hereinbefore described, according to the provisions of said covenant, and still is ready, able, and willing to pay to defendant the sum of $60 per acre, and now brings the same into court for said purpose.

"(8) That the first note for $1,000 is due on the 1st day of September, 1912, with interest from the 6th day of May, 1912, to the 1st day of September, 1912, amounting to $25.50, and plaintiff now brings the sum of $245.50, together with the sum of $780, and places the same into the court according to the terms of said mortgage, and covenants."

The answer denies the tender and some other parts of the complaint, and admits some portions thereof, and sets up said mortgage, and asks for a foreclosure thereof, etc. The reply denies much of the answer, but admits portions thereof.

The court below rendered a decree in favor of the plaintiff, for a release from the lien and effect of said

mortgage of the 13 acres of the land that the plaintiff desired released, and granted a decree for the foreclosure of said mortgage. The defendant appeals from that part of the decree for the release from the lien of said mortgage of said 13 acres of land. The plaintiff did not appeal, and hence that part of said decree foreclosing said mortgage will not be reviewed or disturbed.

1, 2. As stated *supra,* said mortgage contains a covenant that the mortgagee, the defendant, would, from time to time, release from the lien and operation of the mortgage portions of the lands therein described in quantities of not less than one-half acre, upon the request of the mortgagor, the plaintiff, or its successors or assigns, upon the payment by the mortgagor, its successors or assigns, to the mortgagee of the sum of $30, for each and every one-half acre desired to be released. This covenant is to be construed according to the meaning of the language used. The land belonged to the mortgagor, and the mortgagee had a mortgage lien upon it for $7,320. The mortgagor had paid $1,000 on the purchase price of the land. The covenant provides that the mortgagee shall, from time to time, upon the request of the mortgagor, and the payment of $30, for each half acre to be released, release from the lien of the mortgage portions of the land described in the mortgage. This clause was incorporated into the mortgage for the benefit of the mortgagor. It appears from the evidence that the mortgagor, after the execution of the mortgage, erected upon the 13 acres that it desired to have released improvements of considerable value. In the construction of contracts, the office of the judge is simply to ascertain and declare what is in terms or in substance, contained therein, not to insert what has

been omitted, or to omit what has been inserted (Section 715, L. O. L.), and the intention of the parties, as shown by the contract, is to be pursued (Section 716, L. O. L.). We hold that, under the covenant set out *supra,* the plaintiff was entitled to have the 13 acres released from the lien of the mortgage on making a request therefor and paying or tendering payment therefor at the rate of $60 per acre.

The plaintiff alleges that on August 21, 1912, it requested the defendant to release said 13 acres of said land, and at the same time tendered to him therefor $780, and also $245.50, to apply on the $1,000 note, and interest that the plaintiff owed the defendant on said mortgage, making in all $1,025.50 so tendered, and that the defendant refused to execute said release. The defendant did not accept said tender, and the plaintiff, when it commenced this suit, deposited the sum of $1,000 in court for the defendant as a continuing tender. The evidence is conflicting as to whether said tender was made on August 21, 1912. This suit was begun only five days later, and said money was then deposited in court for the defendant as a continuing tender.

James F. Egensperger was president and general manager of the plaintiff at the dates mentioned in the complaint. He testifies, *inter alia,* that about two weeks prior to August 21, 1912, he informed the defendant that the plaintiff desired 13 acres of the land covered by the mortgage released from the lien thereof, and that on August 21, 1912, he called the defendant into the plaintiff's office, and told him that he had the papers and the money ready, and would turn the money over to him when he signed the release of the land. He says, also, that the defendant told him at that time that, since he mentioned the matter of the

release before, he had thought it over, and that he would, under no conditions, sign the release. This witness says that he at that time offered the defendant the $60 per acre, amounting to $780, for releasing the 13 acres, and $245.50 besides, making $1,025.50, that he claims to have tendered to the defendant on August 21, 1912. The witness says that he offered the $780 to obtain the release of the 13 acres of land; that the other $245.50 that he offered was what he had figured would be necessary (with the $780) to pay the $1,000 that would become due September 1, 1912, including interest on it. He says that he had a check on a Joseph bank for $1,025.50, payable to the defendant, and offered it to the defendant on August 21, 1912, and that the latter refused to make the release, but made no objection to the tender. The evidence shows that the president of the plaintiff had prepared a paper in due form for the release of said 13 acres, and that the release described the 13 acres that the plaintiff desired released, and that he presented said release to the defendant, and asked him to execute it, and that the defendant refused to execute it. The evidence of the defendant shows that this release was presented to him for execution, and that he knew what land it included and that he refused to release said land. On August 21, 1912, when the defendant was asked to execute said release, he was in the employ of the plaintiff. The defendant in his evidence admits that he had a conversation with the president of the plaintiff on August 21, 1912, and that the latter presented to him a release of the 13 acres of land, and asked him to execute it, and that he refused to do so. The defendant says that the president of the plaintiff did not offer him any money, and that he did not see him have a check. He says, also, that

he does not know whether he said anything about paying him money or not, but he does not think that he did. The defendant says (Evidence, p. 45) that the president of the plaintiff pressed him to sign the release, and that he finally told him that he would not sign it until he got legal counsel, and he says that he did not execute the release as requested, because to execute it would weaken his security, and that he did not deem it fair to take the choice land with all the improvements from the mortgage. These improvements were made on the land by the plaintiff after the mortgage was executed. The defendant admits that his refusal to execute the release was not due to the fact that there was no money or currency tendered him.

3. The court below found that the plaintiff did not tender to the defendant, on August 21, 1912, the necessary amount, and demanded the execution of the release. The amount that should have been paid or tendered to the defendant on August 21, 1912, was $60 per acre for 13 acres of land, or $780 in all. No part of the $1,000.00 note was due until September 1, 1912. It was not necessary that the plaintiff pay or tender more than the $780.

The president and general manager of the plaintiff testifies that he tendered the defendant by check, the $780, and $245.50 more to pay the $1,000 note and interest; but the defendant denies that he offered him any money or check, and says that he does not think that anything was said about paying him. The defendant admits, however, that he refused to execute the release because to execute it would release from the mortgage the land upon which the improvements had been erected and weaken his security. He said that the failure to produce the money or currency had

nothing to do with his refusal to execute the release.
The amount finally brought into court as a tender to
the plaintiff is $1,025.50.

4. The defendant contends in effect that, assuming
the evidence of Mr. Egensperger relating to the ten-
der to be true, the tender was *conditional* and invalid.
Mr. Egensperger (Evidence, p. 3), says that:

"On the 21st day of August, having had all things
in readiness, I called Mr. Hamilton into the office, and
told him that I had the papers ready and the money,
*and would turn it over to him when he signed the re-
lease.*"

On page 8 of the evidence he was asked what he said
to Hamilton when he wanted the release signed, and
he answered:

"As soon as the release was made, I would turn the
check over to him [Hamilton]."

These extracts contain a fair statement of what said
witness said in regard to turning the check over to
the defendant. The substance of his offer was to give
him the check as soon as he should execute the re-
lease. He did not offer him the check absolutely. He
was to be paid on his executing the release. The
$780 was to be paid *for the release.* When a person
is to perform an act, the obligation to perform *which
is independent of any precedent or concurrent act to
be performed by the other party,* as where money
is to be paid in liquidation of a debt, the money or
thing to be delivered must be tendered *uncondition-
ally,* and a tender, under such circumstances, accom-
panied with some condition which the tenderer has no
right to make, as where the sum is offered "as a set-
tlement," or "in full payment," is invalid: 38 Cyc.
152; 1 Jones, Mort. (6 ed.), § 893; *Tuthill* v. *Morris,*
81 N. Y. 94.

In this case, however, the tender of the $780 was not made *primarily* to pay an existing indebtedness. It was made to obtain a release of the 13 acres of land. Under the covenant, the release was to be executed upon the request of the plaintiff, and the payment of the $60 per acre. The request for the release, the payment of the money, and the execution of the release were to be mutual and concurrent acts, to be performed as one transaction. Payment of the money without obtaining the release would have left the lien of record on the 13 acres, and the plaintiff would not have obtained that for which it made the payment.

Discussing this subject, 38 Cyc. p. 153, *inter alia,* says:

" * * And a tender of performance may be accompanied by such conditions, as to acceptance as are, by the contract, conditions precedent to be performed by the party to whom the tender is made, and which, therefore, the tenderer has a clear right to exact; *and, where mutual concurrent acts are to be performed,* the word 'tender,' as used in such connection, *does not mean the same kind of offer as where it is used with reference to an offer to pay an ordinary debt* in money; *but it only means readiness and willingness,* accompanied with ability to do the thing required, and notice of a readiness to perform, *providing the other party will concurrently do the thing that he is requested to do,* and it has been held that a tender may be made conditional upon proof being produced that the party holding the claim has a right to receive payment, if circumstances exist which reasonably induce a belief in the tenderer that the tenderee has not such right."

28 Am. & Eng. Ency. Law (2 ed.), page 31, says:

"It is often broadly stated that a tender must be absolute and without condition. The rule may be more accurately stated as follows: A tender, to be good, must not be accompanied by any condition to

which the creditor has a right to object; but it is not invalidated by being coupled with a condition upon which the debtor has the right to insist, and to which the creditor cannot reasonably object.''

The same volume, page 33, says:

''A tender is not invalidated because it is coupled with a demand for the performance of a reciprocal duty enjoined by law upon the person to whom the tender is made. * * It has frequently been held that a tender of the amount of a mortgage debt is not invalid because coupled with a demand for a cancellation or release, or a reconveyance.''

In *Smith* v. *Lewis,* 26 Conn. 119, the court says:

''Some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case of *mutual and concurrent promises.* The word 'tender,' as used in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it and nothing further remains to be done, but the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties to do the acts which the agreement requires him to perform, *provided* the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. * * It is not an absolute, unconditional offer to do or transfer anything at all events, but it is in its nature *conditional* only, and *dependent on,* and to be performed only in case of, the readiness of the other party to perform his part of the agreement.''

In *Shouse* v. *Doane,* 39 Fla. 108 (21 South. 811), the court says:

''The complainant was not required to make an *unconditional* tender. His tender must be, in its nature,

*conditional* only, and dependent on and to be performed only in case of the readiness of the other party to perform his part of the agreement. The requirement of a 'tender of purchase money,' used in this connection, does not mean a tender strictly valid at law, but means a present readiness, willingness, and ability in good faith to perform the acts required of one by the agreement, *provided* the other party will concurrently do the things which he is required by the contract to do, and notice by the former to the latter of such readiness, willingness, and ability.''

In *Halpin* v. *Phoenix Ins. Co.*, 118 N. Y. 176, 177 (23 N. E. 485), the court says:

''But where there is no dispute as to the amount of the debt, a tender may always be restricted by such conditions as by the terms of the contract are conditions precedent *or simultaneous to the payment of the debt* or proper to be performed by the party to whom the tender is made. * * In all these cases the party making the tender had a legal right to insist, as a condition of payment, that the party to whom the tender was made do the things demanded, and for that reason coupling such conditions to the acceptance of the tender did not destroy its effect. A debtor who has transferred securities as collateral to the debt, has a legal right, upon payment of the debt, to have such collaterals reassigned to him, and a tender of the debt is not destroyed by making it a condition of its acceptance, that the creditor transfer the collaterals to him, because that condition is one the debtor has a right to insist upon and the creditor no right to refuse; so a mortgagor who pays a bond and mortgage, has a legal right to have the mortgage satisfied on the record. In no way, except by a certificate of the holder of the mortgage, can that result be accomplished. It is within the terms of the contract between the parties, and is a thing which, on payment of the debt, the mortgagee is under an obligation to do and one which a court of equity would compel him to do. It is a condition, therefore, which the mortgagor

has a right to attach to the tender of the debt, and does not destroy its effect.''

In *Johnson* v. *Cranage,* 45 Mich. 18 (7 N. W. 190), the court says:

"A tender may very properly be coupled with conditions snch as the party has a right to make, and is entitled to as resulting from a payment or tender legally made. * * The plaintiffs could not obtain possession of their logs from the Boom Company even had they paid in full all that was demanded, without an order from Johnson, and they on making a tender to him had a right to couple it with a demand for their logs, or what would entitle them to a delivery of the logs.''

In *Mankel* v. *Belscamper,* 84 Wis. 223 (54 N. W. 502), the court says:

"The tender of the entire amount was made to the plaintiff at her residence, and it is plain from the testimony that she had no intention of taking it, but was rather actuated by a disposition to subject the defendant to difficulty and embarrassment. It was her duty at that time to have received the money, and to have executed to the defendant the deed of conveyance of the premises in question. * * The tender was not impaired by the fact that he (when he made the tender) demanded a deed, for he did not insist upon any condition except such as the plaintiff was clearly in duty bound to perform at the time of payment, by the contract.''

See on this point, also, *Kennedy* v. *Moore,* 91 Iowa, 39 (58 N. W. 1065); *Taylor* v. *Mathews,* 53 Fla. 776 (44 South. 146); *Harding* v. *Giddings,* 73 Fed. 335 (19 C. C. A. 508).

If the plaintiff offered to pay the defendant the $60 per acre for releasing the 13 acres of land, on his executing the release, and requested him to execute the release, that constituted a valid tender. The

plaintiff was entitled to have the release executed on paying or offering to pay the defendant the stipulated price, and as soon as the money was tendered, it was the duty of the defendant to execute the release. The request to execute the release, the payment or tender of the money, and the execution of the release were concurrent acts to be done by the parties. If the plaintiff tendered the money, and demanded the execution of the release, he did no more than he had a right to do. The money was to be paid to obtain the release of the mortgage lien on the 13 acres, and the plaintiff had the right to make the tender conditional on the execution of the release.

As stated *supra*, the plaintiff was obliged to pay, or offer no more than the $780, in order to entitle it to the release. No part of the mortgage debt was due at the time that the tender was made or when the suit was commenced.

5. The evidence shows that on August 21, 1912, the manager of the plaintiff called the defendant into the plaintiff's office, and there presented to him a release that had been prepared for the defendant to execute, and asked him to execute it. The release described the 13 acres of land that the plaintiff desired the defendant to release from the mortgage lien. The defendant admits all this, and that he knew what particular land the release described. The manager of the plaintiff says that he had at that time a check for the money, and informed the defendant that the money or the check for the money was to be turned over to the defendant on his executing the release. The evidence shows beyond all doubt, and the defendant admits, that he refused to execute the release because to release the 13 acres would weaken his security for the amount owing him on the mortgage; the improve-

ments erected by the plaintiff being on the 13 acres. He admits that his refusal to execute the release was not due to the failure of the plaintiff to offer him the money or currency covering the amount to be paid for the release. The refusal of the defendant to execute the release for the reason that its execution would weaken his security constituted a waiver of the necessity of making a tender.

Pomeroy, Contracts, Section 326, says:

"Although the plaintiff must in general show an actual performance on his part, or else a tender or offer of performance, yet such tender or offer is sometimes unnecessary, and a readiness and willingness to perform is sufficient. The necessity of a tender is obviated, and the readiness and willingness supply its place whenever the case shows, either in the allegations or the evidence, *that if a tender had been made it would have been refused by the defendant,* or shows that the defendant had, by his own acts or omissions, made it impossible for him to accept the plaintiff's offer, and fulfill his own part of the agreement. Under such circumstances, equity does not require the empty show of a tender."

Waterman, Specific Performance, Section 446, says, *inter alia:*

"A tender of performance need not be made when it would be wholly nugatory. * * When the facts alleged in the bill, or given in evidence, show that an offer of performance by the plaintiff would not have been accepted, such offer is therefore rendered unnecessary. If the vendor denies the obligation of the contract, resumes possession of the land, and receives the rents and profits, a tender by the vendee of the purchase money is not necessary to entitle him to a decree for specific performance."

"When a vendor places himself in such a position as to make it appear that if a tender of the purchase price were made its acceptance would be refused,

the purchaser need not make a tender in order to maintain his bill. In such case, an offer to bring the money into court when the amount is liquidated and his decree granted is sufficient.''

See on this point, also, *Guillaume* v. *K. S. D. Land Co.*, 48 Or. 400 (86 Pac. 883, 88 Pac. 586); *Merrill* v. *Hexter*, 52 Or. 144 (94 Pac. 972, 96 Pac. 865); *West* v. *Washington Ry. Co.*, 49 Or. 436 (90 Pac. 666); *Whitney Co.* v. *Smith*, 63 Or. 190, 191 (126 Pac. 1000); *Woods* v. *Wickstrom*, 67 Or. 581 (135 Pac. 192).

The evidence of the defendant shows that if the $780 had been tendered to him in gold on condition that he execute the release, he would have refused to accept it or to execute the release. He had made up his mind not to execute a release of the 13 acres, and hence no tender was necessary.

6. We think, however, that the evidence shows that the plaintiff was able, willing, and desirous to pay to the defendant the $780, and that it really did offer to give him a check for the same on condition that he execute the release. The court below held the tender was made on August 21, 1912, and we affirm this finding. The manager of the plaintiff testifies that he did make the offer. We think that the defendant is honest in not remembering that such an offer was made. He made up his mind to refuse to execute the release, and cared little about an offer that he had made up his mind to decline. According to the evidence of the defendant, the interview between him and the manager of the plaintiff was a spirited affair, and both parties became angry. We think that the defendant gave no attention to what he was to be paid for the release, and forgot that the plaintiff offered him a check for the amount. The manager of the plaintiff who says that he did offer the defendant a

check for the amount is more likely to remember what he did than the defendant who denies that he made said offer.

7. When the witnesses are of equal credibility, *positive* evidence as to what was done is entitled to more weight than *negative* evidence relating to the same transaction: 17 Cyc., p. 801.

The plaintiff claims to have made the tender on August 21, 1912, and this suit was commenced on August 26th, only five days after the making of said tender. When this suit was commenced the money was deposited in court as a continuing tender to the defendant. We affirm the findings of Judge Knowles in regard to the tender.

We have examined all the questions at issue, and we find no error in the proceedings of the trial court. The decree of the court below is affirmed.

AFFIRMED.