Argued January 15, affirmed January 26, 1915.

# CITY MESSENGER CO. *v.* POSTAL TELEGRAPH CO.*

(145 Pac. 657.)

**Contracts—Construction—Intent of Parties.**

1. The court should construe a contract with regard to the intent of the parties as expressed in the words used.

**Contracts—Modification—Construction.**

2. A contract between a telegraph company and a messenger company required the latter to deliver messages for the former, at specified rates of payment for deliveries within 20 blocks, and authorized the messenger company to collect reasonable charges from the addressees for deliveries outside that limit, not, however, to exceed the charges for similar service made by other telegraph companies. Several years after the contract was made, another telegraph company established free delivery throughout the city, and the messenger company was notified to discontinue charging addressees for the delivery of any telegrams. The manager of the telegraph company at that time stated that it would pay for such deliveries. *Held,* that the written contract was modified by the parties, and the messenger company was not required to make the deliveries outside the 20-block limit free, but could recover from the telegraph company the reasonable value of such deliveries.

**Evidence—Parol Evidence—Terms not in Writing.**

3. Where a part of a transaction has been reduced to writing, but another part has not, the rule against contradicting terms of the writing applies only to that part reduced to writing.

**Evidence—Parol Evidence—Oral Modification.**

4. A written agreement, except when prohibited by positive law, may be modified or annulled by a subsequent valid oral agreement.

[As to when parol evidence is admissible to aid construction of contract, see notes in 5 Am. Rep. 241; 122 Am. St. Rep. 545.]

**Contracts—Modification—New Conditions.**

5. Where the situation of the parties to a written contract is materially changed by conditions unforeseen when the contract was made, so as to cause additional expense in its performance, the one who agrees to bear such expense cannot, after the contract has been performed by the other, repudiate that agreement and rely upon the terms of the written contract.

**Contracts—Construction—Questions for Court—Oral Modification.**

6. Where it was practically undisputed that a written contract had been modified by a subsequent oral agreement, the construction of the contract as modified was a question for the court.

---

*The question of parol modification of original contract required to be in writing is treated in a note in 4 L. R. A. (N. S.) 980.
REPORTER.

74 Or.—28

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.    Statement by MR. JUSTICE BEAN,

This is an action by the City Messenger & Delivery Company against the Postal Telegraph Company to recover from the defendant the reasonable value of certain services rendered it.    From a judgment based upon a verdict for the plaintiff, the defendant appeals.

Both parties to the action are Oregon corporations. The plaintiff, as its name implies is engaged in the delivery,, by messengers, of packages, messages and telegrams.    Its business is conducted in the City of Portland, Oregon,    The defendant is a common carrier of telegrams for hire, operating in the State of Oregon, and forms part of a general system of telegraph and cable lines known as the "Mackay System," or "Postal Telegraph-Cable System."    The services, for which recovery was had in the lower court, consisted in the plaintiff delivering a large number of telegrams for the defendant from the 1st day of February, 1912, to the 1st day of September, 1913; these were all delivered within the corporate limits of the City of Portland, and were what are known as "long deliveries"; that is, they were addressed to places more than 20 blocks distant from the office of the defendant from which the telegrams were issued.    It is conceded that the plaintiff actually rendered the services for which recovery was had.    Such performance having been admitted, the plaintiff was required, in its direct case, to prove only the reasonable value thereof.    Competent testimony upon this point was introduced, and the matter submitted to the jury for determination. No attack is made upon the conclusiveness of the de-

termination by the jury so far as the reasonableness of the charges made by the plaintiff is concerned.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Holman & Hampson* and *Mr. Omar C. Spencer,* with an oral argument by *Mr. Spencer.*

For respondent there was a brief over the name of *Messrs. Brewster & Mahaffie,* with an oral argument by *Mr. Charles D. Mahaffie.*

MR. JUSTICE BEAN delivered the opinion of the court.

It is the defendant's theory of this case that, although the plaintiff performed the services in question of the reasonable value of $2,373.70, nevertheless the company was under no obligation to pay the plaintiff this sum, or any sum, for the rendition of the same. Defendant contends that the services in question were performed by the plaintiff under the terms of a contract by which the latter was required to render the same in consideration of the general compensation moving from the defendant to the plaintiff under the contract, which heretofore the defendant has fully paid.

On October 1, 1903, the plaintiff entered into a written contract with the Postal Telegraph-Cable Company, a New York corporation, by the terms of which it was provided that the plaintiff should deliver for this company all its telegrams for delivery in the City of Portland, Oregon, for a period of 10 years from the date of the contract. It was further provided that the contract should be binding upon the parties thereto, and upon their respective successors and assigns, and it was understood and agreed that the Postal

Telegraph-Cable Company of New York and its allied companies should be considered as one and the same company. The fact was established at the trial of this case that the defendant Postal Telegraph Company, an Oregon corporation, is allied with the Postal Telegraph-Cable Company, one of the contracting parties to the agreement of October 1, 1903. It further appeared that ever since the organization of the defendant company in November, 1903, the plaintiff and the defendant have acted under and in part performed the contract of October 1, 1903, as though the defendant had been one of the original contracting parties thereto. The defendant set up this contract in its answer, on the theory that it required the plaintiff to perform the services in question without special compensation from the defendant. The provisions of the contract which are deemed material to this litigation are as follows:

"Third. The Messenger Company further agrees to promptly deliver in the said City of Portland, Oregon, all telegraph messages handed it by the Postal Company for delivery. * *

"Fourth. The Postal Company * * agrees to pay to the Messenger Company three and one half (3½) cents for each telegraph message collected by the Messenger Company within seven (7) blocks of any of its offices where messengers are kept for the collection of messages, and accepted for transmission by the Postal Company, and three and one half (3½) cents for each telegraph message delivered for the Postal Company by the Messenger Company within said limits; and further agrees to pay to the Messenger Company five (5) cents for each telegraph message collected by the Messenger Company between seven (7) and twenty (20) blocks distant from such offices, and accepted for transmission by the Postal Company, and five (5) cents for each telegraph

message delivered for the Postal Company by the Messenger Company within said limits. * *

Sixth.   It is mutually agreed that * * during the continuance of this agreement * * the Postal Company * * shall not without the consent of the Messenger Company collect or deliver telegraph messages by messengers or permit any other corporation, firm, or individual to collect or deliver telegraph messages by messengers for said Postal Company in the said City of Portland, Oregon. * *

"Eighth.   It is mutually understood and agreed that the Messenger Company may charge and collect from the addressees reasonable sums for the delivery of any of said telegraph messages addressed to points out of the delivery districts hereinabove described in paragraph fourth, in said City of Portland, provided, however, that such charges shall not exceed the sums charged by other telegraph or district companies in said city for like service, * * it being understood and agreed that the Postal Company and its allied companies shall be considered as one and the same company."

It was alleged and proved by the defendant that on November 20, 1911, the Western Union Telegraph Company, a business competitor of the defendant, adopted a policy of delivering telegraph messages free of delivery charges or tolls to the addressees thereof, at all places within the city limits of Portland.   It is contended by defendant's counsel that by express written agreement the plaintiff was required to deliver for the defendant all the latter's telegrams addressed to points in the City of Portland; that the defendant, in addition to agreeing to pay the stipulated sums of money, extended to the plaintiff the privilege of collecting from the addressees of telegrams addressed to points out of the delivery districts above mentioned reasonable sums, "provided such sums should not ex-

ceed the sums charged by other telegraph or district companies in said city for like service.'' Under this contract, prior to November 20, 1911, the plaintiff delivered for the defendant all its telegrams within the city limits of the City of Portland, and the defendant paid the plaintiff the agreed amounts, and permitted the latter to collect from the addressees reasonable sums for messages delivered beyond the 20-block limit, It is shown by plaintiff that afterwards and until February, 1912, plaintiff submitted bills, and the defendant paid for deliveries outside the 20-block limit. It also appears that during the time of the contract for deliveries outside the city limits the plaintiff collected of the recipients of messages, when able to do so, and, when not, the defendant paid therefor. On November 20, 1911, upon adoption by the defendant of a free delivery system, and a notification to the plaintiff that the latter should make no further collection from the addressees for the long deliveries, defendant claims that the plaintiff was still required to make such deliveries under the express terms of the contract; that the privilege of collecting from the addressees ceased, since the collection of any sum would have exceeded that charged by the Western Union Telegraph Company; but that no obligation or duty on the part of the defendant to pay the plaintiff particular or additional sums for making these long deliveries existed or arose, since, under the terms of the contract, the plaintiff was already required to perform the same as part of the general services agreed to be rendered by it thereunder.

The trial court refused to accept the defendant's theory of the case and charged the jury to find for the plaintiff the reasonable value for making the long deliveries mentioned. By exceptions to such instruc-

tion, and to the refusal of the court to charge the jury according to defendant's interpretation, and by a motion for a directed verdict in favor of the defendant, the question is raised as to whether or not the plaintiff was required under the terms of the agreement to make the long deliveries as a part of the general services to be performed by it during the 10-year term in consideration of the stipulated sums of money to be paid by the defendant. The only question involved depends upon the construction of the contract. Defendant's counsel urge that after the free delivery system was extended by the defendant, by paragraph 8 of the agreement, plaintiff was precluded from making any charge against addressees, and that there was no express obligation in the contract requiring the defendant to pay the plaintiff specially for making long deliveries.

1. It is the duty of the court to construe a contract having regard to the intent of the parties as expressed in the words they have used: 2 Elliott on Contracts, § 1507; *Arment* v. *Yamhill Co.*, 28 Or. 474, 479 (43 Pac. 653); *Smith* v. *Kerr*, 108 N. Y. 31, 37 (15 N. E. 70, 2 Am. St. Rep. 362); *Walker* v. *Tucker*, 70 Ill. 527, 532; *Mathews* v. *Phelps*, 61 Mich. 327, 332 (28 N. W. 108, 1 Am. St. Rep. 581); *Wallowa Lake Amusement Co.* v. *Hamilton*, 70 Or. 433 (142 Pac. 321).

2. The letter of notification from the defendant to the plaintiff, when acceded to by the latter, modified paragraph 8 of the contract so that there was no agreement as to compensation for deliveries outside the 20-block limit. Under the contract, as so changed, what was the situation of the parties as to the payment of this service? The agreement had been in force for a long time. The change in the limits of the free delivery district does not appear to have been

in the contemplation of the contracting parties at the time of the original agreement. The proviso, in paragraph 8, "that such charges shall not exceed the sums charged by other telegraph or district companies in said city for like service," was intended to regulate the amounts of collection from addressees in order not to curtail the business of the telegraph company, and not to stipulate the compensation of the delivering company in the event that such collections should be dispensed with. The telegraph company during all the time made provisions for delivering messages within certain limits free of expense to the addressees, yet the plaintiff was to be compensated by the defendant for services within such free delivery districts. Nowhere is it apparent that the messenger company should perform services free of charge, or that the rates received within any certain limits should liquidate or affect to any extent the payment for deliveries outside such limits. No good reason appears to warrant the belief that the parties intended that the plaintiff should be paid for making deliveries at a short distance from the office and receive no remuneration for carrying telegrams a longer distance. This is indicated both by the terms of the contract and the conduct of the parties thereunder. The change merely extended the boundaries of the free delivery area. The subject of the amount to be paid for this particular service, after the change in the system, was not embraced within the terms of the written memorandum.

3, 4. Where a certain part of a transaction has been embodied in a single writing, but another part has been left in some other form, the rule against disputing the terms of the document will be applicable to so much of the transaction as is so embodied, but

not to the remainder: 4 Wigmore, Ev., § 2430. A subsequent departure from the terms of a written contract by the parties and mutually acquiesced in abrogates the original contract to that extent. A written agreement, except when prohibited by positive law, may be modified or annulled by a subsequent valid oral agreement of the parties: *Zanello* v. *Iron Works,* 62 Or. 213 (124 Pac. 660); *Pippy* v. *Winslow,* 62 Or. 219, 224 (125 Pac. 298).

The manager of the plaintiff company testified, in effect, that after the receipt of the notice not to charge he communicated with Mr. Annand, the manager of the defendant company, and asked him who would pay for the long deliveries, and was assured that the Postal Telegraph Company would pay the same; that after that telegrams were sent out under that arrangement.

5. Where, after a contract is entered into, conditions materially change in a way unforeseen at the date of the agreement, and the question arises as to who is to bear the expense, the party then agreeing to assume it cannot, after the work is done, fall back on the terms of the original contract: *Stewart* v. *Keteltas,* 22 N. Y. Super. Ct. (9 Bosworth) 261. There is no more certain way of finding out what the contracting parties meant than to ascertain what they have actually done in carrying out the contract. By so doing we learn what construction the parties themselves have placed upon the terms of their stipulation: 2 Page, Contracts, § 1126; *Brooklyn L. Ins. Co.* v. *Dutcher,* 95 U. S. 269, 272 (24 L. Ed. 410); *Hall* v. *French Wine Co.,* 149 App. Div. 609 (134 N. Y. Supp. 158); *Lowrey* v. *Hawaii,* 206 U. S. 206 (51 L. Ed. 1026, 27 Sup. Ct. Rep. 622).

6. There was practically no dispute that the contract was changed. It was therefore proper for the court to construe it as modified; and to submit to the jury the determination of the amount of the reasonable value of the services.

The interpretation of the contract by the learned judge was correct.

The judgment of the lower court will therefore be affirmed.                              AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS, concur.